## AH YEW *v.* D. CHOATE.

MINING LICENSES — PRIVATE LANDS. — That portion of the Revenue Act of 1861 which provides for the collection of licenses from foreign miners does not refer to mines contained in lands which are the private property of individuals, but only to mines in the public lands of the State or the United States.

*Query ?*—What are mineral lands within the meaning of the eighth section of the Act of April 16th, 1859, to provide for the issue of patents for school lands located with State school land warrants ?

PATENT FOR SCHOOL LANDS—EFFECT OF.—Where land is located under a State school land warrant, and a patent is issed after all the proceedings required by law have been taken, the patent is the record of the judgment of the State, by its officers duly appointed for that purpose, that the land embraced within the patent is not mineral land within the meaning of said section eight.

PATENT OF LAND CONTAINING GOLD.—The fact alone that sufficient gold has been found upon land conveyed by such patent to induce the patentee to mine for that metal, and to extract from twenty-five to thirty dollars per day, with seven or eight hands, is not sufficient to destroy the verity of such record and make the land mineral land within the meaning of said section eight.

APPEAL from the District Court, Eleventh Judicial District, Placer County.

Suit was commenced September 28th, 1863. The complaint averred that the plaintiff was a native of China, and had been for more than three months engaged in mining on a tract of land in Placer County, described, according to the official survey of the United States, as the northwest quarter of Section Number Four, Township Number Twelve North, Range Number Seven East, Mount Diablo base and meredian,

in the district of lands subject to sale in the Marysville
Land District; that defendant was the collector of foreign
miner's licenses; that in accordance with the Act of April
23d, 1858, entitled "An Act to provide for the location and
sale of the unsold portion of the five hundred thousand acres
of land donated to the State for school purposes, and the
seventy-two sections donated to this State for the use of a
Seminary of Learning," that the State of California, by its duly
authorized agents, about the 28th day of January, 1859,
selected said land as a portion of the seventy-two sections
donated to this State for the use of a Seminary of Learning,
and that said location was, before the patent was issued,
approved by the Government of the United States; that after-
wards the State sold said land to Stephen D. Burdge, and
gave him a certificate of purchase; that Burdge paid the
State for the land, and duly advertised that he would apply
for a patent; and that afterwards, T. L. & L. R. Chamber-
lain became the assignees of said Burdge's interest in the
land, and the State of California, on the 2d day of June, 1863,
issued to them a patent for the same; that plaintiff is and for
more than two months has been in the possession of a por-
tion of said land, as the lessee of said Chamberlain, and has
been engaged in mining on the same, and working several
men, and taking out from fifteen to twenty-five dollars per
day in gold dust, and can continue to do so until his lease
expires, which will be December 21st, 1863; that the defend-
ant, on the 23d day of September, 1863, demanded of plain-
tiff the sum of four dollars for a mining license or tax for
September, 1863; that plaintiff refused to pay, and defendant
seized and levied upon the leased premises, and has adver-
tised the same for sale for non payment of the mining license,
and fixed the day of sale for September 30th, 1363, at two
o'clock, P. M.; that the sale will create a cloud upon plain-
tiff's title, etc., etc.

The complaint prayed for an injunction restraining the
sale, etc.

The defendant demurred to the complaint; the demurrer

was overruled, and judgment rendered for plaintiff as prayed for.

Defendant appealed.

*Jo Hamilton*, for Appellant.

In looking at the merits of plaintiff's suit, can he, under any circumstances, maintain it? We think it will be found that he cannot.

Respondent's attorneys rely strongly on the decision of the Court in the case of *Ah Hee* v. *Crippen*, 19 Cal. 491, which they say is conclusive of this case. And that in *Doll* v. *Meador*, 16 Cal. 295, it is held the patent is conclusive, and cannot be attacked by any one not claiming from the same source. They seem to forget that the State of California, by her officers, is really the defendant sued, and the very party from whom plaintiff claims his rights. They forget another thing, that even if the rule they invoke should preclude us from changing the effect and exclusiveness of the patent, yet they themselves have to all intents and purposes removed the burden from us by doing it themselves. Whatever may be the effect of this patent, we must say that it never intended conveying mineral lands upon which plaintiff can mine from twenty-five, fifteen, and thirty dollars per day.

The very Act recited in plaintiff's patent—the very Act under which the patent was issued, excludes mineral lands from its operation. In *Doll* v. *Meador*, 16 Cal. 324, the Court say "that if the patent be void upon its face, or issue without authority, or were prohibited by statute, it may be impeached collaterally," etc.

We hold that plaintiff's own complaint impeaches his patent and destroys his case, and shows very clearly not only that the State never intended to patent or deed away her mines, but that the statute precludes it, and that there was no authority in any person so to make it. The answer of plaintiff that we had a right to contest the issue of the patent, and that the issue of the patent is a determination of the question as to whether the lands were mineral or not, and that by them hav-

ing been patented they are declared *not to be mineral lands*, is merely begging the question. He avers that he will be in all probability injured if prevented from working his mining claim in one sentence, and then asserts that the Courts have determined that he has no mining claim. In the next he invokes the aid of the Court to protect him in that which by his own showing does not exist—an anomaly in pleading, a contradiction in terms, a conflict in ideas.

There certainly is a very wide difference between this case and the case of *Ah Hee* v. *Crippen*, and the reasoning of the Court in the one case will not apply and was not intended to apply to the like class of cases as the other.

The Court, in the one case, set out to construe the Act of 1860, with its provisions to lands patented by the United States. In that suit, the plaintiff sued in replevin for property, wherein the power of the officer to seize and hold the presumed property sued for is brought directly in question.

In this suit, it asks injunction to restrain the beclouding title to two months tenancy upon mining ground which is not a mining claim, and to prevent irreparable injury from resulting to plaintiff from being prevented from mining upon lands that contain no minerals.

It is suggested that the rule as laid down in the case of *Ah Hee* v. *Crippen* is too broad; that under the Act of 1861 this Court will not sustain the grounds taken by the Court in construing the Act of 1860.

The spirit of the Act of 1861, we think, was clearly laid down years before in the case of *The People* v. *Naglee*, 1 Cal. 232, which has always been considered as the true doctrine, and the decision in the case of *Ah Hee* v. *Crippen* is not in conflict with that case.

The business or vocation of mining in the hands of certain persons was the thing taxed; and the property of the person taxed was subject to its payment. And we can see no difference; and that the patentee of lands from the State could with just as much reason say that his tenants on patented land following the business of merchandise, selling groceries,

etc., should pay no tax or license, because it detracted from his fee in the lands, as to say that plaintiff could maintain this suit.

The fee in the land is not brought in question; the plaintiff, doing a certain business, must pay so much to the State for the privilege.

*George Cadwalader*, for Respondent.

The land was private property, and the State could not collect the tax from the plaintiff. This was decided by the case of *Ah Hee* v. *Crippen*, 19 Cal. 491.

The State cannot deny the legitimate effect of her own patent, nor complain of the sale upon any ground. (*Doll* v. *Meador*, 16 Cal. 295; *Cooper* v. *Roberts*, 18 How. 173.)

By the Court, SAWYER, J.

It was held in *Ah Hee* v. *Crippen*, 19 Cal. 497, and we think correctly, that the sixty-fourth section of the Revenue Act of 1860 does not refer to mines contained in lands which are the private property of individuals, but only to mines in the public lands of the State or United States. The provisions of the Revenue Act of 1861 are substantially the same upon this point as those of the Act of 1860, and must receive the same construction. If, then, the fee of the land upon which the plaintiff was mining was in his landlord, that decision is decisive of this case, and the plaintiff is not liable to pay the license sought to be collected.

The plaintiff is mining upon lands patented to his lessors as school lands, under the Act of April 16, 1859. Section eight provides that "nothing in this Act shall be construed so as to authorize or confirm the location or purchase of any of the mineral, swamp, or overflowed lands in this State as school lands." (Laws 1859, p. 340.) The question is, do the allegations of the complaint show a title in fee in the plaintiff's lessors? It appears from the averments of the complaint, that under a lease from the patentees, and with their permission, the plaintiff is working several men, and taking out gold

to the value of from twenty-five to thirty dollars per day. The defendant, a collector of the foreign miners' license tax, insists that it appears from the foregoing allegations of the complaint that the lands referred to are mineral lands, and that the patent is therefore void. All lands containing gold are not necessarily mineral lands within the meaning of the section under consideration. Probably there is very little land within the basin formed by the Sierra Nevada and Contra Costa ranges of mountains that does not contain more or less of the precious metals. It may turn out that much of the land now regarded as suitable only for pasturage and agricultural purposes contains sufficient quantities of gold to justify the expense of extracting it by mining ; yet, in the present state of our knowledge upon the subject, it could not be called mineral lands. It is not easy in all cases to determine whether any given piece of land should be classed as mineral lands or otherwise. The question may depend upon many circumstances : such as whether it is located in those regions generally recognized as mineral lands, or in a locality ordinarily regarded as agricultural in its character. Lands may contain the precious metals, but not in sufficient quantities to justify working them as mines, or make the locality generally valuable for mining purposes, while they are well adapted to agricultural or grazing pursuits ; or they may be but poorly adapted to agricultural purposes, but rich in minerals ; and there may be every gradation between the two extremes. There is, however, no certain, well defined, obvious boundary between the mineral lands and those that cannot be classed in that category. Perhaps the true criterion would be to consider whether upon the whole the lands appear to be better adapted to mining or other purposes. However that may be, in order to determine the question, it would, at all events, be necessary to know the condition and circumstances of the land itself, and of the immediate locality in which it is situated. It is the duty of the officers of the Government having the matter in charge, before making a grant, to ascertain these facts, and to determine the problem whether the lands are

mineral or not. In this instance the lands appear to have been surveyed with a view of bringing them into market, for they are described by range, township, and section, " according to the official survey of the United States." It is alleged that the location was approved by the Government of the United States ; that the purchase money was paid to the State of California ; that the notice of intention to apply for a patent was published, as required by law, and that the patent set out in the record was duly issued by the State.

The regular proceedings prescribed by law, then, have been taken, and the officers of the Government have ascertained these facts, and adjudged the lands to be subject to be granted. In the language of Mr. Chief Justice Field, in *Doll* v. *Meador*, 16 Cal. 324, the patent " is the record of the State that the land was subject to location under the grant of the United States, and has been located through its officers in pursuance of the terms of the donation ;" and we may add in this case, that it is also a record of the judgment of the State, by its officers duly appointed for that purpose, that the conditions and characteristics of the land were not such as to constitute it mineral lands within the meaning of the provisions of the statute, and the verity of this record is not overthrown by the mere fact appearing in the complaint that the land patented has been ascertained to contain a sufficient amount of gold to induce the plaintiff to mine it for that metal. *Prima facie*, the complaint shows a title in fee in the patentees, the parties under whom the plaintiff holds. The patent is valid upon its face, and it is only upon matters *dehors* the instrument that it is attacked. And these matters relied on appearing in the complaint are insufficient to justify the Court in holding—in the face of the patent, and the solemn record of the action of the State to the contrary—that the lands granted by it are mineral lands within the meaning of the statute.

This view of the case renders it unnecessary to consider the question whether this is one of the cases in which the patent can be attacked collaterally, or in any mode other than

by a direct proceeding on the part of the State to vacate it, or, if so, whether the defendant stands in such a relation to the State as would enable him to assail it.

The judgment is affirmed.