[No. 14045.    In Bank. — May 2, 1891.]

# R. HERMOCILLA, APPELLANT, v. W. J. W. HUBBELL ET AL., RESPONDENTS.

STATE SCHOOL LANDS — CONGRESSIONAL GRANT — MINERAL LANDS. — The grant of the sixteenth and thirty-sixth sections of public land to the state, by the act of Congress of March 3, 1853, did not include lands known to be mineral at the date of the grant.

ID. — GRANT IN PRÆSENTI — MINES SUBSEQUENTLY ABANDONED — TITLE OF STATE. — The grant of the sixteenth and thirty-sixth sections being a grant *in præsenti,* if the land was known to be mineral in character at the time the grant was made, no title passed to the state, and the fact that the mines upon the lands were worked out and abandoned as unprofitable, after the grant was made, gives the state no title to them.

ID. — EJECTMENT — STATE PATENT — COLLATERAL ATTACK — RIGHTS OF MINING CLAIMANTS — PRIVITY WITH UNITED STATES. — Defendants in possession of a sixteenth or thirty-sixth section, which was known to be mineral land prior to 1853, and who are holding it as mining claims under locations recently made in accordance with the law of Congress, and with the local rules and customs of miners, are in privity with the United States, and may attack a patent of the land from the state to the plaintiff, in an action of ejectment.

ID. — EVIDENCE — VALUE OF MINING CLAIMS. — Evidence is admissible in favor of such defendants as to the work done by them on their mining claims since the date of their location, for the purpose of showing that the land, which was known to be mineral at the date of the grants, is still valuable for its minerals, and to overcome the theory of the plaintiffs, that they were of no value.

APPEAL from a judgment of the Superior Court of Placer County, and from an order denying a new trial.

The facts are stated in the opinion.

*F. P. Tuttle*, and *C. Tuttle*, for Appellant.

The grant of the sixteenth and thirty-sixth sections within the state of California, found in sections 6 and 7 of the act of March 3, 1853, was a grant *in præsenti*, taking effect when the land was surveyed. (*Sherman* v. *Buck*, 45 Cal. 656; *Cooper* v. *Roberts*, 18 How. 173; *Higgins* v. *Houghton*, 25 Cal. 252.) The patent presupposes that everything requisite to its validity has been done. (*Doll* v. *Meador*, 16 Cal. 296; *Summers* v. *Dickinson*, 9 Cal. 554.) The location and listing of the land to the state is equal to a patent from the United States to the state. (*Frasher* v. *O'Connor*, 115 U. S. 102.) Parties attacking a patent must show that at the time of the issuance of the patent the land was mineral, and more valuable for mining than for agriculture. New discoveries, subsequent changes in conditions, by which mines become profitable, cannot affect the title as it passed at the time of sale. (*Hunt* v. *Steese*, 75 Cal. 620; *Colorado Coal etc. Co.* v. *United States*, 123 U. S. 307.) The mere presence of minerals in unascertained quantities cannot fix on the land in dispute such a mineral character as would render the patent void. (*Mott* v. *Reyes*, 45 Cal. 382; *Westmoreland Coal Co's. Appeal*, 85 Pa. 346; *Ah Yew* v. *Choate*, 24 Cal. 562; *Colorado Coal etc. Co.* v. *United States*, 123 U. S. 307.) Defendants are not in a position to attack the patent. (*Doll* v. *Meador*, 16 Cal. 325; *O'Connor* v. *Frasher*, 56 Cal. 499.)

*J. M. Fulweiler*, and *Hale & Craig*, for Respondents.

The grant of the sixteenth and thirty-sixth sections of public lands in the state of California, by the act of March 3, 1853, was not intended to cover mineral lands, but such lands were excluded from that grant as they were

from all others, by the settled policy of the general government on that subject. (*Ivanhoe Mining Co.* v. *Keystone Con. M. Co.*, 102 U. S. 167–176.)

BELCHER, C. — This action is ejectment to recover possession of the east half of the east half of the southwest quarter, and the west half of the west half of the southeast quarter of a certain sixteenth section of land situate in Placer County. Other portions of the section are described in the complaint, but as no contest was made as to them, they need not be referred to further.

The defendants, Hubbell, Shea, and California Quartz Mining Company, alone answered. They denied all the averments of the complaint, and alleged that the portions of the section above described were, in 1850, and ever since had been, and then were, mineral lands of the United States, having known valuable mineral deposits therein, consisting of placers containing gold in paying quantities, and quartz ledges or deposits of gold-bearing rock in place, carrying gold and other precious metals in paying quantities, and that during all the times mentioned the said placers and quartz ledges had been, from time to time, in the actual possession of citizens of the United States, who were working and exploring the same for the gold and precious metals they contained. They further alleged that in the year 1880 two quartz mining claims, which are particularly described, were located on the demanded premises by citizens of the United States, and in conformity to the laws thereof, and the local rules, regulations, and customs of the mining district, one by the grantor of defendant Shea, and the other by the grantors of the defendant California Quartz Mining Company, and that the locators and the said defendants, as their successors in interest, had ever since held, possessed, and worked their respective claims as mining claims.

The case was tried by the court without a jury, and

judgment was entered that the defendants above named were the owners and entitled to the possession of their respective mining claims, as described, and as to them that the plaintiff take nothing; and that the plaintiff was the owner and entitled to the possession of all the balance of the land sued for, as against all of the defendants. From this judgment, so far as it was against her, and from an order denying a new trial, the plaintiff appeals.

The plaintiff claimed title under a patent from the state, issued to one Banvard, her grantor, in 1870, and the first question is, Was title to this land vested in the state at the time of the issuance of the patent? If it was, then the plaintiff was entitled to recover; and if not, we think the proper judgment was entered.

Whatever title the state had was acquired under the act of Congress of March 3, 1853, "to provide for the survey of the public lands in California, the granting of preemption rights therein, and for other purposes." (10 U. S. Stats. 244.) By this act (sec. 6) it is declared that sections sixteen and thirty-six "shall be and hereby are granted to the state, for the purposes of public schools in each township."

In *Higgins* v. *Houghton*, 25 Cal. 253, it was held by the supreme court of this state that mineral lands were not excepted from the operation of the grant of the sixteenth and thirty-sixth sections, made to the state by the act of March 3, 1853, and that as fast as the townships were surveyed, the state became the owner of these sections absolutely. (And see *Wedekind* v. *Craig*, 56 Cal. 642.)

The rule declared by this court, as above stated, has not been approved by the supreme court of the United States. On the contrary. it was held by that court, in *Mining Company* v. *Consolidated Mining Company*, 102 U. S. 167, that the grant of the sixteenth and thirty-sixth sections of public land to the state of California, by the act of March 3, 1853, was not intended to cover min-

eral lands, but that such lands were, by the settled policy of the general government, excluded from all grants.

That decision is controlling, and must be followed here. The question then remains, Were the disputed premises, at the time of the grant, mineral lands, —that is, known to be valuable for minerals? (*Deffeback* v. *Hawke*, 115 U. S. 404.)

Upon this question the court below found as follows: " That during all the year 1850, and at the time of the acquisition of the said lands by the government of the United States, and continuously ever since, and on the tenth day of December, 1870, when the said patent was issued to the said E. M. Banvard, and at the time of the survey of the said lands, and the return thereof by the said United States, the said east half of the east half of the southwest quarter and the said west half of the west half of the southeast quarter of said section sixteen were, and have been and now are, known public mineral lands of the United States, having therein known valuable mineral deposits, consisting of gravel or placer deposits and of quartz rock in place, bearing gold in paying quantities, and ever since the twenty-sixth day of July, 1866, have been free and open to exploration and purchase, and to occupation and purchase, as mineral lands, by citizens of the United States, and such as have declared their intention to become such citizens."

It is claimed by counsel for appellant that this finding as to the mineral character of the land was not justified by the evidence, and hence that the judgment should be reversed. We do not think this position can be sustained. It is true, the evidence was somewhat conflicting, but taken as a whole, it was amply sufficient, in our opinion, to justify the finding.

It is further claimed that the placer mines had been worked out, and the quartz mines abandoned as unprofitable, before 1870, and that there was no evidence showing or tending to show a holding or working of any part of the land at the time of the issuance of the patent in 1870.

Conceding this to be so, still it cannot aid the appellant. The grant of the sixteenth and thirty-sixth sections was a grant *in præsenti,* and the only question is, Was the land in question known to be mineral in character at the time the grant was made? If it was, the title did not pass to the state, but the state took a right to other land in lieu thereof, and not a right to this land when its minerals should be exhausted.

It is also claimed that the defendants were not in a position to attack the patent. But as we have seen, the state had no title to the mineral land, and passed none to its patentee. The title still remained in the general government, and under its laws the land was open to occupation and purchase as mineral land. The defendants were in possession of their claims under locations which were made in accordance with the law and the local rules and customs. They were therefore in privity with the United States, and had a clear right to contest the patent and assert their rights.

At the trial the defendants introduced evidence showing the work done on their claims after their location in 1880. This evidence was objected to by the plaintiff as irrelevant and immaterial, and the objections were overruled and exceptions taken.

The evidence was introduced to show that the claims were still valuable, and to overcome the plaintiff's theory that they were of no value. This we think they had a right to do. But if the rulings were erroneous, the plaintiff was in no way prejudiced by them, as she had no title.

It follows that the judgment and order appealed from should be affirmed.

Vancliff, C., and Foote, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.