[No. 19450. Department Two.—July 11, 1895.]

## LOUIS G. DREYFUS, EXECUTOR, ETC., RESPONDENT, *v.* DAVID W. BADGER, APPELLANT.

PATENT—ENFORCEMENT OF TRUST—SHOWING REQUIRED.—A person seeking to have a patentee declared his trustee, in the absence of any contract between the parties, must connect himself with the paramount source of title, and show that he has prosecuted his claim with diligence.

ID. — LIEU LANDS LISTED TO STATE — LACHES OF OCCUPANT. — Where an occupant of land listed to the state in lieu of school land, who seeks to have the patentee of the land from the state declared his trustee, was a qualified pre-emptor residing on the land, and had filed in the local United States land-office his declaratory statement of his intention to pre-empt the land after the state surveyor general had made application to have the land listed to the state as lieu land, whereupon his declaratory statement was canceled, and the land listed to the state, but he took no appeal, and recognized the land as state land, and made application to purchase it from the state, which was rejected to his knowledge on account of the prior application upon which the patent was issued, after which he took no steps to contest the prior application, but slept upon his rights for several years, and until the patent was issued, without being kept in ignorance by any fraud of the patentee, he is guilty of such laches as does not give him any status under which to hold the patentee as his trustee.

ID.—CONCLUSIVENESS OF PATENT—COLLATERAL ATTACK.—Where a patent regular on its face for land owned by the federal or state government has been issued under a law providing for its disposal upon the ascertainment of certain facts, the officers of the land department have juris-

diction to determine such facts, and the issuance of the patent is, upon collateral attack, a conclusive declaration, as against all claiming under the government, that the facts have been found in favor of the patentee.

ID.—CHARACTER OF LAND—SUITABLENESS FOR CULTIVATION—EJECTMENT— COLLATERAL ATTACK UPON PATENT.—Where the plaintiff in ejectment claims under a patent from the state of land listed to it by the government of the United States in lieu of school land, under an affidavit showing that the land was not suitable for cultivation, the patent is conclusive as to the conditions and characteristics of the land, and that the land was of such a character as to not be suitable for cultivation within the meaning of the law, and the patent cannot be collaterally assailed by the defendant in ejectment by proof that the land was suitable for cultivation.

ID.—CONCLUSIVENESS OF PATENT AS TO CHARACTER OF LAND—SOURCE OF TITLE.—The conclusiveness of a patent as to the character of land has no application to a case where the parties claim under independent and hostile sources of title, but it applies to all those who claim under the same source of title under which the patent was issued; and, where the United States, through proper officials, has listed or patented lands to the state, subsequent claimants under the United States are concluded from contesting the character of the land so listed or patented.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order denying a new trial. W. B. COPE, Judge.

The facts are stated in the opinion of the court.

*B. F. Thomas*, for Appellant.

The testimony shows that the land was suitable for cultivation within the meaning of the law. (Pol. Code, sec. 3495; *Jacobs* v. *Walker*, 90 Cal. 43; *Manley* v. *Cunningham*, 72 Cal. 236; *Fulton* v. *Brannan*, 88 Cal. 454.) The consitutional provision that land suitable for cultivation should be granted only to actual settlers is mandatory and prohibitory. (Const., art. I, sec. 22, art. XVII, sec. 3.) The application for the patent being false, the applicant was not entitled to purchase, or to receive a patent. (Pol. Code, sec. 3500; *Davidson* v. *Cucamonga Fruit etc. Co.*, 78 Cal. 4; *Harbin* v. *Burghart*, 76 Cal. 120; *McKenzie* v. *Brandon*, 71 Cal. 210; *Manley* v. *Cunningham, supra; Hollinshead* v. *Simms*, 51 Cal. 158; *Sacramento Savings Bank* v. *Hynes*, 50 Cal. 195; *McDonald* v. *Taylor*, 89 Cal. 42; *Dillon* v. *Saloude*, 68

Cal. 267.) The patentee, having gained the land through fraud and false statements, is an involuntary trustee of the defendant as an actual settler. (Civ. Code, sec. 2224; *Monroe Cattle Co.* v. *Becker,* 147 U. S. 47.) Defendant by his declaratory statement connected himself with the paramount source of title, and can enforce a trust. (*Burling* v. *Thompkins,* 77 Cal. 261; *Widdicombe* v. *Childers,* 124 U. S. 400; *Plummer* v. *Brown,* 70 Cal. 546; *Sanford* v. *Sanford,* 139 U. S. 642; *Rosecrans* v. *Douglass,* 52 Cal. 215.) The defendant in his cross-complaint offered to reimburse plaintiff all the expenses incurred in procuring title to the land, and is entitled to complain of the fraud upon his rights. (*Buckley* v. *Howe,* 86 Cal. 597; *Moore* v. *Robbins,* 96 U. S. 530; *St. Louis Smelting Co.* v. *Kemp,* 104 U. S. 636; *Dolhequy* v. *Tabor,* 22 Cal. 280; *Cumens* v. *Cyphers,* 56 Cal. 383.) A patent issued with all the forms of law may be shown to be void by extrinsic evidence showing a want of authority for its issuance. (*Kile* v. *Tubbs,* 59 Cal. 191; *Cucamonga Fruit Land Co.* v. *Moir,* 83 Cal. 107; *Doolan* v. *Carr,* 125 U. S. 618; *Edwards* v. *Rolley,* 96 Cal. 408; 31 Am. St. Rep. 234; *Read* v. *Caruthers,* 47 Cal. 181; *Keeran* v. *Griffith,* 34 Cal. 580; *Trimmer* v. *Bode,* 82 Cal. 647; *Southern Pac. R. R. Co.* v. *McCusker,* 67 Cal. 67; *Knight* v. *United Land Assn.;* 142 U. S. 161; *Polk* v. *Wendall,* 9 Cranch, 87; *Kansas City etc. Co.* v. *Clay* (Ariz., Jan. 16, 1892), 29 Pac. Rep. 9; *Reynolds* v. *Iron Silver Min. Co.,* 116 U. S. 687.)

*Richards & Carrier,* for Respondent.

The state was entitled to the land reserved to it as lieu land as of the date of the application of the state. (*Frasher* v. *O'Connor,* 115 U. S. 102; *Howell* v. *Slauson,* 83 Cal. 539; *McCreery* v. *Haskell,* 119 U. S. 327.) One whose application has been rejected by the government is not in privity with the government. (*Chapman* v. *Quinn,* 56 Cal. 266; *Kentfield* v. *Hayes,* 57 Cal. 409.) Acquiescence, by failure to appeal from a rejected application, defeats the right of the applicant to hold the

patentee as trustee on the ground of fraud. (*Buckley* v. *Howe*, 86 Cal. 596; *Vance* v. *Burbank*, 101 U. S. 514; *State* v. *Bachelder*, 5 Minn. 223; 80 Am. Dec. 410.) In ejectment based upon a patent the plaintiff must prevail unless the patent is absolutely void. (*Shanklin* v. *McNamara*, 87 Cal. 371; *Steel* v. *St. Louis etc. Co.*, 106 U. S. 447.) The character of the land is a question of fact to be determined in the land-office, or upon a contest instituted in the land-office. (*Johnson* v. *Towsley*, 13 Wall. 83; *Dillon* v. *Saloude*, 68 Cal. 267; *Cowell* v. *Lammers*, 21 Fed. Rep. 206; *St. Louis Smelting Co.* v. *Kemp*, 104 U. S. 641, 645; *O'Connor* v. *Frasher*, 56 Cal. 499; *French* v. *Fyan*, 93 U. S. 169; *Wright* v. *Roseberry*, 121 U. S. 488; *Chandler* v. *Calumet etc. Min. Co.*, 149 U. S. 79; *Ah Yew* v. *Choate*, 24 Cal. 562; *Ferry* v. *Street*, 4 Utah, 521; *Blakslee Mfg. Co.* v. *Blakslee's Sons' Iron Works*, 129 N. Y. 155; *Norvell* v. *Camm*, 6 Munf. 233; 8 Am. Dec. 742; *Shepley* v. *Cowan*, 91 U. S. 330; *Cruz* v. *Martinez*, 53 Cal. 239; *Green* v. *Hayes*, 70 Cal. 276; *Heath* v. *Wallace*, 138 U. S. 585.)

McFARLAND, J.—This was an action of ejectment in which judgment went for plaintiff. Defendant appeals from the judgment and from an order denying a new trial.

The land in contest was listed to the state in lieu of certain school land; and a patent thereto was issued by the state to plaintiff's testator in pursuance of a certificate of purchase issued to one C. F. Wilson. Wilson filed his application for the land in the state land-office on December 31, 1886; his application was approved August 30, 1889; a certificate of purchase was issued to him September 11, 1889; he assigned his certificate to Isadore Dreyfus (respondent's testator) on October 28, 1889; and on February 24, 1893, the state of California issued its patent for the land to said Isadore Dreyfus.

On January 27, 1887, appellant, who was a qualified pre-emptor residing on the land, filed in the local United States land-office his declaratory statement of his inten-

tion to pre-empt said land; but, prior to that, the state
surveyor general had made application to have said land
listed to the state of California in lieu of certain other
land; and on or about July 8, 1889, the said application
was approved, and the said declaratory statement of
appellant canceled.   Appellant did not appeal from the
order canceling said statement, or take any other pro-
ceeding in the United States land department; but, on the
other hand, appellant, on August 15, 1889, made applica-
tion to the surveyor general of California to purchase
said land as land belonging to the state, which applica-
tion was rejected " on account of the said previous appli-
cation of said C. F. Wilson," and also upon the further
ground that the surveyor general had not received
information that the land had been listed.   (It may be
noticed here that appellant's said application contained
the statement " that said land is not suitable for culti-
vation, except only small portions thereof being suitable
for that purpose," but he avers in his pleadings that it
was suitable for cultivation.)   Appellant took no step in
the state land-office toward having a contest over his
right to purchase said land.   He resided on the land
and had improvements thereon.   He filed in this action
an answer and a cross-complaint; and, in the latter, in
which he set up the foregoing facts, he prayed that
respondent be declared to be a trustee of appellant for
said land, and that he convey the same to appellant.   A
demurrer to the cross-complaint was sustained.   In his
answer, in addition to a general denial and the aver-
ment of the facts above stated, appellant averred that
the land was suitable for cultivation, and that neither
Wilson nor Dreyfus resided on the land.   At the trial
the court heard some evidence as to the character of the
land, that is, whether it was suitable for cultivation,
and then instructed the jury that, under the law, it was
their duty to find a verdict for respondent.   Appellant
asked two instructions: One generally to the effect that
if at the time of Wilson's application the land was suit-
able for cultivation, that is, if more than one-half of all

.the legal subdivisions would, without artificial irrigation, produce ordinary crops, etc., and Wilson was not an actual settler on the land, then the verdict should be for appellant; and the other to the effect that if Wilson made a false affidavit in his application as to the land being unsuitable for cultivation, and the evidence showed that it was suitable for cultivation, and Wilson was not a resident on the land, but that appellant was such resident, and otherwise qualified to purchase, then the verdict should be for appellant. These instructions were refused, and the verdict was for respondent.

A reversal of the judgment could be based only upon these two propositions, or one of them: 1. That upon the facts averred in the cross-complaint appellant can hold respondent as trustee for him of the land in contest; 2. That in defense to the action of ejectment appellant can attack respondent's patent collaterally by showing the character of the land in contest.

A person seeking to have a patentee of land declared his trustee, in the absence of any contract between the parties, must connect himself with the paramount source of title, and also show that he has prosecuted his claim with diligence. (*Burling* v. *Thompkins*, 77 Cal. 257; *Doll* v. *Meador*, 16 Cal. 295; *Damrell* v. *Meyer*, 40 Cal. 166; *Kentfield* v. *Hayes*, 57 Cal. 409; *Sacramento Sav. Bank* v. *Hynes*, 50 Cal. 195; *O'Connor* v. *Frasher*, 56 Cal. 499; *Moore* v. *Wilkinson*, 13 Cal. 478; *Chapman* v. *Quinn*, 56 Cal. 266; *Buckley* v. *Howe*, 86 Cal. 596.) Nearly all the cases cited by appellant were cases where contests as to the right to purchase had been referred by the land department to the superior court, under section 3414 of the Political Code, or where each party had in some other way acquired a status. In *Hollinshead* v. *Simms*, 51 Cal. 158, the court discusses mainly the alleged fraudulent acts of one Woods, who was the agent of Hollinshead, and does not discuss the status of Simms. As to the latter it is merely said, generally, that he had "the right, as against the government, to acquire the legal title," and that Simms was not "lacking in dili-

gence in the assertion of his rights." If the case can be taken as having been decided with the status of Simms fully in view and thoroughly considered, it is not in accord with the other decisions, or with the case of *Burling* v. *Thompkins, supra,* in which it is referred to.

In the case at bar appellant has no status as claimant of the land under the United States government. After his declaratory statement had been canceled, and the land listed to the state, he took no appeal, but recognized the lands as state land, and made application to purchase it from the state. Neither has he any status as claimant of the premises as state land. When his application to purchase was rejected he took no step to contest the prior application of Wilson, of which he was informed, but slept upon whatever rights he may have had for some years until Wilson's application had progressed, first into a certificate of purchase, and afterward into a patent. It does not appear that he was kept in ignorance of his rights by any fraud of respondent or his predecessor. In *Kentfield* v. *Hayes, supra,* a case very similar to the one at bar—it was expressly held that an application by defendant to purchase the land in contest which had been presented to and rejected by the state land department did not give him a status from which he was to hold the patentee as his trustee.

2. A defendant may defeat an action of ejectment by showing that plaintiff has no title. But where a patent, regular on its face, has been issued by the government (federal or state) for land which it owns, under a law providing for the disposal of the land patented upon the ascertainment of certain facts, the officers of the land department of the government have jurisdiction to determine such facts, and the issuance of a patent is, upon collateral attack, a conclusive declaration, as against all claiming under said government, that the facts have been found in favor of the patentee. "And this rule applies to the determination of the particular character

of the land which is the subject of the patent." This
was expressly held in *Gale* v. *Best*, 78 Cal. 235, 12 Am.
St. Rep. 44, where we alluded to the authorities at some
length, and, basing our conclusion on decisions of the
supreme court of the United States in *St. Louis Smelt-
ing Co.* v. *Kemp*, 104 U. S. 636, *Steel* v. *St. Louis etc. Co.*,
106 U. S. 447, and *French* v. *Fyan*, 93 U. S. 169, we
declared the law to be as above stated. It would be use-
less to here repeat the views there expressed. (See,
also, the late case of *Barden* v. *North Pac. R. R. Co.*, 154
U. S. 288, and *Irvine* v. *Tarbat*, 105 Cal. 237.) These
cases involved patents of the general government; but,
upon principle, the rule applies with equal force to a
patent of the state government. Moreover, it has been
so expressly held by this court in *Doll* v. *Meador, supra*,
where it was decided that "the patent is the record of
the state, that the land was subject to location under the
grant of the United States, and has been located," and
in *Ah Yew* v. *Choate*, 24 Cal. 562, where it was held that
the patent is also " a record of the judgment of the state,
by its officers duly appointed for that purpose, that the
conditions and characteristics of the land were not such
as to constitute it mineral within the meaning of the
provisions of the statute," etc.

In the case at bar appellant seeks collaterally to assail
respondent's patent by showing the character of the
land. The law provides that if the land be suitable for
cultivation—that is, if each forty-acre tract will produce
ordinary crops without artificial irrigation, etc.—then it
is to be sold only to an actual settler. The respondent's
predecessor sought to purchase the land upon the theory
that it was not suitable for cultivation, and made an
affidavit that it was not so suitable, as required by stat-
ute. Now, the contention of appellant is that he may
show the patent to be void by showing that said affida-
vit was false because the land *was* suitable for cultiva-
tion. But this he may not do, because the patent is
conclusive as to the " conditions and characteristics of
the land." If in ejectment the plaintiff relies on a pat-

ent, it is a defense to show that the patent is void on its face, or that "there is no law which authorizes such a patent *under any state of facts";* but if the law provides that those parts of a large body of lands which are of a particular character shall be disposed of in a certain way, "then the land department has jurisdiction to determine the character of any part thereof, and a patent is conclusive evidence that such jurisdiction has been exercised." (*Gale* v. *Best, supra.*) And so, in the case at bar, the patent is conclusive to the point that the land was of such character as not to be suitable for cultivation within the meaning of the law, and therefore patentable to respondent. Otherwise, the possessor of a patent would have no muniment of title, and the evils depicted by Mr. Justice Field in *Steel* v. *St. Louis etc Co.*, 106 U. S. 447, would ensue.

Counsel for appellant has cited some cases where it has been held that evidence was properly allowed on the point whether certain land was swamp or overflowed or dry; but it is very evident that questions as to swamp lands are very different from those arising in the case at bar. It has always been held that the act of Congress of September 28, 1850, by which the swamp lands were given to California (and the other states) was a grant *in præsenti,* and at its date passed the title to the state; although it also provided that it should be the duty of the secretary of the interior to afterward send lists and plats of such lands to the governor of the state, and also, at the latter's request, issue patents of such lands to the state. (*Wright* v. *Roseberry,* 121 U. S. 488.) As the title passed by said act of 1850 to California to all the swamp land within her borders she was not compelled to wait for the platting and patenting of the same by the land department of the general government; and, as the action of said department was tardy, she proceeded herself to assert her ownership of said lands by providing for their survey and sale, and the issue of patents to the purchasers. (*Wright* v. *Roseberry, supra.*) But under these circumstances it happened sometimes that

before any listing to the state, the United States and the state each issued a patent for the same land to a different person—the former upon the theory that it was dry land, and had not passed to the state, and the latter upon the theory that it was swamp, and passed to her by the said act of 1850; or pre-emptors, under the United States, claimed against patentees of the state. Nearly all the contests about swamp lands have arisen in this way—that is, between those who claimed the land under the United States as dry land and those who claimed it under the state as swamp land; and in such cases the contestants did not claim under the same source of title, but the claim of each was hostile to the source under which the other claimed. If the land was swamp the title had passed to the state in 1850, and a patent for the same land afterward by the United States was as worthless as a conveyance by A of the land of B; and the same was true of a patent by the state if the land was not swamp. It is evident, therefore, that the principle of the conclusiveness of a patent can have no application to such a case; for that principle applies only to those claiming under the government which issued the patent—under the same source of title. But, of course, the land department of one government cannot conclude those claiming under the other government—under an independent and hostile source of title. And in such a case the only means of determining the controversy is an inquiry into the character of the land. And that means was properly applied in *Read* v. *Caruthers*, 47 Cal. 181, and in other cases cited. Where, however, the United States, through proper officials, had listed or patented lands to the state as swamp, then subsequent claimants *under* the United States were concluded from showing that the land was not swamp. (*French* v. *Fyan, supra; Wright* v. *Roseberry, supra.*)

The judgment and order are affirmed.

Henshaw, J., and Temple, J., concurred.