[Civ. No. 4843. Second Appellate District, Division One.—June 2, 1927.]

## JOHN GRAHAM, Respondent, v. GEORGE REED et al., Appellants.

[1] PUBLIC LANDS—VALIDITY OF PATENT—COLLATERAL ATTACK.—A patent to land from the state is not subject to collateral attack, but may be attacked only on a direct proceeding to set it aside on the ground of fraud or other invalidity.

[2] ID.—LAND PATENTED BY STATE—ATTACK ON VALIDITY OF PATENT—INVESTIGATION AS TO CHARACTER OF LAND—FINDINGS—QUIETING TITLE.—In an action to quiet title to land claimed by plaintiff through mesne conveyances from the original patentee, where the state's patent was issued in 1890, and, prior to the location in 1921 of defendant's claim of title under a placer location, investigation as to the character of the land was concluded, a finding that the lands were mineral since the time of the grant from the federal government to the state under the act of Congress of March 3, 1853, was beyond the court's power and void, as the patent from the state was not subject to attack on the ground that the land being mineral the state never acquired title.

[3] TAXES — SALE TO STATE — REDEMPTION — PARTY IN INTEREST. — Where land was sold to the state for taxes, a party having pro-

---

1. Effect of patent to public lands and how may be attacked, notes, 2 Am. Dec. 568; 12 Am. Dec. 564. See, also, 21 Cal. Jur. 756; 22 R. C. L. 308, 342.

3. Scope and import of term "owner" in statute declaring who may redeem from tax sales, note, 2 A. L. R. 792. See, also, 24 Cal. Jur. 337; 26 R. C. L. 430.

cured a quitclaim deed to it from persons holding an undivided two-thirds interest was entitled to redeem the whole of said land as against a claim under a placer location established after the tax sale, since the grantee under the quitclaim deed, having an interest at the time of redemption, was a "party in interest" within the meaning of section 3780 of the Political Code.

(1) 32 Cyc., p. 895, n. 49.    (3) 37 Cyc., p. 1383, n. 90.

APPEAL from a judgment of the Superior Court of San Bernardino County. Benjamin F. Warmer, Judge. Affirmed.

The facts are stated in the opinion of the court.

John L. Campbell for Appellants.

Chas. L. Allison for Respondent.

McLUCAS, J., *pro tem.*—Plaintiff brought suit to quiet title to certain portions of section 36, township 6 north, range 4 west, San Bernardino base and meridian, situated in San Bernardino County. Judgment was rendered for plaintiff and defendant appeals therefrom.

Plaintiff claims title through mesne conveyances from Charles S. McDuffee, patentee from the state of California, under date of April 14, 1890, and also as a redemptioner from a tax sale to the state of California for delinquent taxes for the year 1915; said redemption being made on the seventeenth day of March, 1923. Defendant claims title by virtue of a placer location under date of February 2, 1921.

The chief question involved in the decision of this case is whether the patent to McDuffee is subject to collateral attack. Appellant contends that he is entitled to a reversal of the judgment and an order directing judgment to be entered upon the findings quieting his title to his said placer mining claim. In support of his contention appellant calls attention to the findings of the court and the allegations of the complaint as follows: Finding II of the court reads: "That on the 3rd day of March, 1853, and continuously ever since and on said 14th day of April, 1890, when said patent was issued to the said Charles S. McDuffee, the lands included in said Section 36 were mineral in fact, and at the

time of the survey of said lands and the return thereof by the United States, said lands were mineral and well known to be so.'' As this appeal is upon the judgment-roll alone, it does not appear upon what evidence the trial court based its finding that on the third day of March, 1853, and ever since, said lands were mineral in fact and were well known to be so at the time of the survey of said lands and the return thereof by the United States. In so far as disclosed by the findings, the placer claim of the defendant was not located until the second day of February, 1921. No other facts appear in the findings to indicate that said lands were well known to be mineral at the time of the survey and the return thereof by the United States. Paragraph IV of the second cause of action in the complaint reads: ''That said lands and premises are valuable only for the lime rock and lime ore therein contained. That the surface of said lands is barren and unproductive and has no value for agricultural purposes and yields no income whatsoever except the income derived from the mining, extracting and sale of lime rock and lime ore therein contained.''

Appellant concedes that said patent is not subject to collateral attack unless, first, the state had no title; second, it is absolutely void upon its face; third, the issuing thereof was without authority; or, fourth, was prohibited by statute; citing *Patterson* v. *Winn*, 11 Wheat. (U. S.) 380 [6 L. Ed. 500], and *Doll* v. *Meador*, 16 Cal. 324, 325. Appellant claims that the title to the land in question did not become fixed and absolutely vested in the state of California at the time of the survey and the return thereof by the United States, and that said title did not so rest in the state of California at the date of the issuance of said patent on April 14, 1890. As recited in the patent, whatever title was possessed by the state at the date of the issuance of the patent was held by virtue of the act of March 3, 1853 (10 Stat. 244), granting to the state of California sections 16 and 36 of each township in said state for school purposes. Section 6 of said act reads as follows: *''And be it further enacted,* That all the public lands in the State of California, whether surveyed or unsurveyed, with the exceptions of sections sixteen and thirty-six, which shall be and hereby are granted to the State for the purposes of public schools in each township, and with the exception of lands appropriated

under the authority of this Act or reserved by competent authority; and excepting, also, the lands claimed under any foreign grant or title, and the mineral lands, shall be subject to the Pre-emption Laws of 4th September, eighteen hundred and forty-one, with all the exceptions, conditions and limitations therein, except as is herein otherwise provided; and shall, after the plats thereof are returned to the office of the register, be offered for sale, after six months' public notice in the State, of the time and place of sale, under the laws, rules and regulations now governing such sales, or such as may be hereafter prescribed.'' In support of his argument appellant cites the case of *Ivanhoe Min. Co.* v. *Keystone Consolidated Min. Co.,* 102 U. S. 167 [26 L. Ed. 126, see, also, Rose's U. S. Notes], where the court interpreted the statute hereinbefore mentioned as follows: ''It follows, from the finding of the court and the undisputed facts of the case, that the land in controversy, being mineral land and well known to be so when the surveys of it were made, did not pass to the State under the school section grant.'' In the foregoing case, however, the facts are to be distinguished from those in the instant case. In that case plaintiff asserted title to the land in controversy under a patent from the state of California and the defendant under patents from the United States. The trial court found the land to be mineral, and that the patent of the United States was issued to defendant for three several mining claims—one located in 1851, one in 1853, and one in 1863; that the original locators of said claims and their grantees have held undisputed possession thereof ever since, and by such possession and the working of said mines the possessory title was vested in defendant at the time it filed its application for said patent in the land office of the United States on January 6, 1871, unless the state of California had acquired title to section 36 by grant from the United States. On the eighteenth day of June, 1870, application was made to the state authorities to purchase the land on which these claims were located, and a state patent was issued to plaintiff's vendee on October 3, 1872. The township in which the land lies was surveyed in the field in March, 1870, the survey approved September 3, 1870, and the plat filed in the United States land office at Sacramento October 7, 1870. Within three months after this latter date the

application of the defendant was made for patent for the three mining claims and the patents were issued July 14, 1873.

On the other hand, in the present case it does not appear from the findings that the defendant ever received a patent from the United States, but merely that on the second day of February, 1921, thirty years after the state patent was issued to plaintiff's predecessor in interest, the defendant located placer mining claims on said land by posting thereon a notice of location, and that a copy of said location notice was recorded in the office of the county recorder of San Bernardino County in 1921. In the preceding case the claims were located about twenty years before the state patent was issued to defendant. In the case at bar it does not appear at what time the survey of said lands or the return thereof was made by the United States. Nor does it appear that the defendant ever made application for patents of the mineral claims from the United States.

The question as to whether a land patent issued by the state is subject to collateral attack is ably discussed in *Saunders* v. *La Purisima Gold Min. Co.*, 125 Cal. 159 [57 Pac. 656]. The facts in that case are in many respects very similar to the facts in the present case. In that case defendants located a mineral claim on certain lands six years after the state patent therefor had been issued to plaintiff's predecessor in interest. On the trial defendants offered "to prove that the land in controversy—namely, the north extension of the La Purisima quartz mining claim—was expressly excepted from the grant to the state of California by the act of Congress approved March 3, 1853, as the same is mineral land." Plaintiff's objection to the offer was sustained and thereafter the court granted a new trial on the ground that the court erred in sustaining the objection to defendant's offered evidence as to the mineral character of the land in controversy. Plaintiff appealed from the order granting a new trial. In reversing the order for a new trial the supreme court said:

"The respondents rely upon *Hermocilla* v. *Hubbell*, 89 Cal. 5 [26 Pac. 611], in support of the order of the court granting them a new trial. Although the facts in that case are different from those in this, still it must be confessed that said case furnishes support to the contention of re-

spondents. The opinion seems to rely upon *Ivanhoe Min. Co.* v. *Keystone Consolidated Min. Co.*, 102 U. S. 168 [26 L. Ed. 126, see, also, Rose's U. S. Notes], and it is said with reference thereto: 'That decision is controlling and must be followed here. The question then remains, Were the disputed premises at the time of the grant mineral land—that is, known to be valuable for minerals?'

"The facts as found in *Hermocilla* v. *Hubbell, supra,* were that during the year 1850, and continuously ever since, and when the said patent was issued on the tenth day of December, 1870, and at the time of the survey of said lands (being a portion of the sixteenth section), 'they were and have been, and now are, known to be public mineral lands of the United States, having therein known valuable mineral deposits.' Whereas, in the United States case, referred to by the commissioner as controlling, and to be followed by this court, the facts were that there were three mining claims on the land in controversy—one located in 1851, another one in 1853, and the other in 1863, the last being seven years before the public survey of the tract, which was in 1870. The mining patent was applied for on these locations nearly two years before the state patent was issued and subsequently and within a year thereafter the United States patent was issued on said mining locations. Hence the contest in that case was between two conflicting patents. Whereas, in *Hermocilla* v. *Hubbell, supra,* the contest was in the nature of a collateral attack upon a state patent, on the ground that the land was mineral land. It is said in the latter case: 'The question then remains, "Were the disputed premises at the time of the grant mineral lands—that is, known to be valuable for mineral lands?"' But another and equally important question seems to have been overlooked by the court in that case, and that is, By whom and at what time are the facts to be ascertained and determined as to the character of the land at the time of the grant, whether mineral or nonmineral? And another question of equal importance is as to the effect of a patent, issued by competent authority, purporting to convey such land. The decisions of the Supreme Court of the United States upon both of these questions are so numerous and so uniform (and the decisions of this court are in the same line, with few exceptions) that both questions now ought to be considered

well settled. The first is, that by the laws of Congress providing for the patenting of certain public lands, upon the ascertainment of certain facts, the proper officers of the land department of the general government have jurisdiction to inquire into and determine those facts; that is, if a large body of public lands be subject to sale or other disposition, but subject to reservation of such parts as may be found to be of a particular character, as swamp or mineral land, the land department has jurisdiction to determine the character of any part thereof, and its decision is conclusive. In *Steel* v. *Smelting Co.*, 106 U. S. 447 [27 L. Ed. 226, 1 Sup. Ct. Rep. 389, see, also, Rose's U. S. Notes], Mr. Justice Field, speaking for the court, says: 'We have so often had occasion to speak of the land department, the object of its creation, and the powers it possesses in the alienation by patent of portions of the public lands, that it creates an unpleasant surprise to find that counsel, in discussing the effect to be given to the action of that department, overlooked our decisions on that subject. That department, as we have repeatedly said, was established to supervise various proceedings whereby evidence of a title from the United States to portions of the public domain is obtained, and to see that the different requirements of acts of Congress are fully complied with. Necessarily, therefore, it must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the nature of the land, and whether it is of a class which is open to sale. Its judgment upon these matters is that of a special tribunal, and is unassailable except by direct proceeding for its annulment or limitation. Such has been the uniform language of this court in repeated decisions.'

"In this case it was shown that the land in question was surveyed and sectionized—whereas the act of Congress directed that in case of mineral lands it should not be sectionized—and that the plat of survey showing the land to be agricultural land, in other words, not mineral, was returned and properly approved. As a further measure of precaution, and to allow abundant opportunity for a full investigation and ascertainment of the character of the land, the disposal of the same was suspended for a number of years, and finally, it having been determined that it was of the

character of land subject to be granted to the state, a certificate was issued by the proper United States authorities to the state of California, certifying its right to the section of land in question under the grant of 1853. The state's patent thereupon issued to the plaintiff's grantor long prior to the intrusion of the defendants for the purpose of mining. Under the rule just cited, this concluded the investigation as to the character of the land, except on a direct proceeding to set aside the patent on the ground of fraud or other invalidity."

In *Gale* v. *Best,* 78 Cal. 235 [12 Am. St. Rep. 44, 20 Pac. 550], the plaintiff claimed under a patent to a tract of land under a railroad grant. The defendants claimed by right of possession, upon the ground that it was mineral land, and that all mineral lands are reserved in the grant of Congress to said railroad company. In affirming the judgment, the supreme court said: "Our opinion is, that where a patent issues for public land under a law which provides for its disposal as agricultural land,—either to a railroad company or to pre-emption or homestead claimants,—and there is no reservation in the law except a general one of mineral lands, and no reservation at all in the patent, then the patent must be considered as a conclusive determination by the government that the land is agricultural; and afterward, in an action in a court of law, it is not competent to reopen the question of the character of the land. The opposite view would render the titles to a large region of California now rapidly filling up with agricultural settlers unstable, insecure, and almost worthless. It would affect, also, those holding through patents under the pre-emption and homestead laws,—for mineral lands are exempted from the provisions of those laws. The theory of that view is, that if the land previously patented as agricultural can at any time be shown to be in fact mineral, then the title to it never passed from the United States, but it had always remained a part of the public domain; and as no statute of limitations runs against the government, the insecurity of the title under the patent would be perpetual, and an attack upon it could be made as successfully one hundred years hence as now. Such, in our opinion, is not the law." The foregoing case was cited and approved in *Dreyfus* v. *Badger,* 108 Cal. 58 [41 Pac. 279], where the plaintiff relied upon a state patent

issued on state lieu school lands, and the defendant as a pre-emptioner antedating his right as such prior to the patent by the state. In affirming the judgment of the lower court, the supreme court says: "A defendant may defeat an action of ejectment by showing that plaintiff has no title. But where a patent, regular on its face, has been issued by the government (federal or state) for land which it owns, under a law providing for the disposal of the land patented upon the ascertainment of certain facts, the officers of the land department of the government have jurisdiction to determine such facts, and the issuance of a patent is, upon collateral attack, a conclusive declaration, as against all claiming under said government, that the facts have been found in favor of the patentee. 'And this rule applies to the determination of the particular character of the land which is the subject of the patent.' This was expressly held in *Gale* v. *Best*, 78 Cal. 235 [12 Am. St. Rep. 44, 20 Pac. 550], where we alluded to the authorities at some length, and, basing our conclusion on decisions of the Supreme Court of the United States in *St. Louis Smelting Co.* v. *Kemp*, 104 U. S. 636 [26 L. Ed. 875], *Steel* v. *St. Louis etc. Co.*, 106 U. S. 447 [27 L. Ed. 226, 1 Sup. Ct. Rep. 389], and *French* v. *Fyan*, 93 U. S. 169 [23 L. Ed. 812], we declared the law to be as above stated. It would be useless to here repeat the views there expressed. (See, also, the late case of *Barden* v. *North Pacific R. R. Co.*, 154 U. S. 288 [38 L. Ed. 992, 14 Sup. Ct. Rep. 1030], and *Irvine* v. *Tarbat*, 105 Cal. 237 [38 Pac. 896].) These cases involved patents of the general government; but, upon principle, the rule applies with equal force to a patent of the state government. Moreover, it has been so expressly held by this court in *Doll* v. *Meador, supra,* where it was decided that 'the patent is the record of the state, that the land was subject to location under the grant of the United States, and has been located,' and in *Ah Yew* v. *Choate*, 24 Cal. 562, where it was held that the patent is also 'a record of the judgment of the state, by its officers duly appointed for that purpose, that the conditions and characteristics of the land were not such as to constitute it mineral within the meaning of the provisions of the statute,' etc."

*Worcester* v. *Kitts,* 8 Cal. App. 181 [96 Pac. 335], is a case in which the question of collateral attack on state pat-

ents was again considered. The court said: "The sole ques-
tion in the case is, Are the state patents, under which plain-
tiff claims, conclusive as to the character and condition of
the land? Concededly, the learned trial judge decided the
case upon the authority of *Saunders* v. *La Purisima etc. Co.*,
125 Cal. 159 [57 Pac. 656]. In that case the land had been
surveyed in 1870 and the survey approved and official plat
filed. In this official plat the section was marked and re-
turned as agricultural land and unoccupied. In 1884 the
United States certified, through its proper officer, to the
state of California, that the land was unoccupied, and that
there were no valid claims thereto adverse to the state. The
land had been surveyed and returned by the government as
agricultural in character, and so certified by the government,
twenty years before the state sold it, and the purchaser had
occupied it for six years before any claim was made that it
was mineral. The case referred to decided that it was too
late to inquire into the character of the land, and that upon
the facts as shown the patent was a conclusive determination
of the question. The facts here are wholly different. With-
out stating all the allegations of the answer, it was shown
that most of the land in question was mineral land, and well
known so to be before the grant to the state; that when it
was surveyed in 1867 some of the land was occupied and
being mined for gold under mineral locations; that the
survey and report and plat filed in the United States land
office showed the land to be mineral; that subsequently many
mineral locations were made and were being worked up to
the time this action was commenced and after the patents
issued; that the land never was certified to the state as non-
mineral, or agricultural, and has never been listed to the
state as school land or at all. The case, then, is altogether
different in its facts from the facts in *Saunders* v. *Purisima
etc. Co.*, 125 Cal. 159 [57 Pac. 656], and it is contended,
therefore, that it should not be governed by the latter case.
But this is a collateral attack upon a state patent, which
takes it out of the rule in *Hermocilla* v. *Hubbell*, 89 Cal. 5
[26 Pac. 611], relied on by appellants. Besides, the case
was practically overruled in *Saunders* v. *La Purisima etc.
Co.*, 125 Cal. 159 [57 Pac. 656], and it was therein pointed
out that a very important question was overlooked in *Hermo-
cilla* v. *Hubbell*, 89 Cal. 5 [26 Pac. 611], namely, 'By whom

and at what time are the facts to be ascertained and determined as to the character of the land at the time of the grant, whether mineral or nonmineral? And another question of equal importance is as to the effect of the patent, issued by competent authority, purporting to convey the land.' The court proceeds to show, by adopting the rule laid down in *Dreyfus* v. *Badger*, 108 Cal. 58 [41 Pac. 279], and other cases quite fully commented upon, that 'where a patent, regular on its face, has been issued by the government (federal or state) for land which it owns, under a law providing for a disposal of the land patented, upon the ascertainment of certain facts, the officers of the land department of the government have jurisdiction to determine such facts, and the issuance of a patent is, upon collateral attack, a conclusive declaration, as against all claiming under said government, that the facts have been found in favor of the patentee. And this rule applies to the determination of the particular character of the land which is the subject of the patent.' In the Dreyfus case the issue was between a state patent to lieu land and a claim under the pre-emption and homestead acts. Mr. Lindley stated that 'the land department of the government, in recent years at least, by a uniform line of decisions, has held that mineral lands did not pass to the state under the school grants.' (1 Lindley on Mines, sec. 136.) Still, the question must be determined by appropriate proceedings and may not be by collateral attack. Strong as the facts are as set forth in the answer, and conclusive as they might be if shown to be true, on a direct attack, we do not think they can be advanced in this action to overthrow the state patent. *Saunders* v. *La Purisima etc. Co.*, 125 Cal. 159 [57 Pac. 565], seems to so hold, and if the doctrine of that case is to be modified, it must be by the court that enunciated it.''

[1] The principles discussed in the foregoing authorities are deemed decisive in the case at bar. On the authority of these cases we hold that where the state's patent was issued to plaintiff's predecessor in interest long prior to the location of defendant's mining claim, investigation as to the character of the land is concluded and the state's patent is not subject to collateral attack, but can only be attacked on a direct proceeding to set aside the patent on the ground of fraud or other invalidity. [2] It follows that the finding

of the trial court made on August 22, 1923, that on March 3, 1853, and ever since, the said lands were mineral in fact and well known to be so, was of no force and effect as being beyond the power of the court in a collateral proceeding and therefore void. Defendant has not shown himself entitled to bring such suit under the circumstances of this case, where the state patent was issued in 1890 and neither the defendant nor any other person, so far as appears from the findings, made any attempt to locate a mineral claim on said lands or to do any mining thereon until more than thirty years had elapsed after the issuance of the state patent.

It is claimed by appellant that the patent issued to plaintiff's predecessor in interest is void *ab initio* for the reason that "the patent was issued in violation of the statutes of California providing for the disposition of mineral lands." This argument assumes the premises which we have already held could not be shown by way of collateral attack, namely, that the said land was mineral in fact and well known to be so at the date of the issuance of the patent. On its face the said patent is valid in every particular. It grants the said land to Charles S. McDuffee and to his heirs and assigns forever, without any determination whatsoever as to the character of the land so granted. Appellant concedes that the grant by Congress to this state of the sixteenth and thirty-sixth sections by the act of 1853 was a grant *in praesenti*, and that at the time of the grant there were no known minerals or other exceptions noted in the grant. Appellant then proceeds to the conclusion that the patent issued by the state was void because violating its statutes as to mineral lands, thus assuming the very point in issue which, according to the language of the foregoing authorities, cannot be determined in collateral proceedings. Nowhere does it appear in the record that the state authorities ever took any affirmative action indicating the land to be mineral in character. On the other hand, the state issued its patent in the year 1890, as its patents are issued for all agricultural lands, without any terms, restrictions, or conditions whatsoever. Neither does it appear from the record or the findings that the land was ever designated by the United States survey as of mineral character.

[3] It appears from the findings that the property involved was sold to the state on June 30, 1916, for the taxes

of 1915 assessed against Charles S. McDuffee; that on July 1, 1921, the tax collector of San Bernardino County made a deed conveying the said land to the state and a corrected deed dated September 22, 1921; that prior to July 1, 1921, the title to an undivided two-thirds of said land was granted by Charles S. McDuffee to S. Vere McDuffee. The court further finds: ''That on or about the 27th day of September, 1922, and while defendant was so occupying said mining claim, with full knowledge upon his part of the mineral character of said land, and the further fact that defendant Reid was in possession of said placer mining claim, working the same, for the mineral-bearing rock contained therein, plaintiff John Graham procured from said S. Vere McDuffee and wife, a quit-claim deed conveying to him all their title, right and interest in and to said 570 acres of land.'' Appellant now urges that the plaintiff is a stranger to the title and could not redeem for the reason that the right of redemption was personal to former owners or those in privity with them before a deed was issued to the state. Section 3780 of the Political Code provides: ''A redemption of the property sold may be made by the owner, or any party in interest, within five years from the date of the sale to the state, or at any time prior to the entry or sale of said land by the state, in the manner provided by section three thousand eight hundred and seventeen.'' Appellant contends that the words ''any party in interest'' appearing in the foregoing section refer to an interest in the land during the five years prior to the deed to the state. We are cited to no case which supports appellant's position, and in the absence of such authority, we prefer to construe the words ''any party in interest'' as being without limitation and therefore including any person who has an interest at the time of the redemption, though such interest was acquired after the deed was made to the state. In this conclusion we are fortified by the language appearing in section 3817 of the Political Code, as follows: ''In all cases where real estate has been sold, or may hereafter be sold for delinquent taxes to the state, and the state has not disposed of the same, the person whose estate has been, or may hereafter be sold, his heirs, executors, administrators, or other successors in interest, shall, at any time after the same has been sold to

the state, and before the state shall have disposed of the same, have the right to redeem such real estate by paying to the county treasurer of the county wherein the real estate may be situated, the amount of taxes, penalties and costs due thereon at the time of said sale, with interest on the aggregate amount of said taxes, at the rate of seven per cent per annum; . . . " While the plaintiff acquired title to an undivided two-thirds interest only, we believe his interest was such as to entitle him to redeem the whole of said land as against this defendant.

For the reasons stated, it is ordered that the judgment be affirmed.

Conrey, P. J., and York, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 1, 1927.