[Sac. No. 642.  In Bank.—June 20, 1899.]

HARRIET H. SAUNDERS, Administratrix, et cetera, Appellant, v. LA PURISIMA GOLD MINING COMPANY et al., Respondents.

SCHOOL LANDS OF STATE—CONCLUSIVENESS OF PATENT—CHARACTER OF LAND—COLLATERAL ATTACK BY MINING CLAIMANTS.—Where public land of the United States was surveyed and sectionized, and designated upon the survey as agricultural land, and was thereafter certified as such by the land department of the United States, and listed as such to the state for school purposes, under the grant of 1853, and was subsequently patented, by the state as agricultural land, the investigation as to the character of the land is concluded, as against a collateral at-

tack; and no persons subsequently intruding upon the patented land, for the purpose of mining, can assail the state patent by proof that the land was mineral at the time of the grant to the state, and was reserved as such from the grant.

ID.—GRANT OF SCHOOL LANDS TO STATE—ABSENCE OF KNOWN MINERALS.—The grant by Congress to this state of the sixteenth and thirty-sixth sections, by the act of 1853, was a grant *in presenti*, and if at that time there were no known minerals, or other exceptions noted in the grant, those sections then became the land of the state.

ID.—ADJUDICATION AS TO CHARACTER OF LANDS—CASE OVERRULED.—The decisions of the land department of the United States as to the nonmineral character of a school section, and as to the absence of any exceptions or limitations contained in the act of 1853, and the subsequent patent of the state therefor, are conclusive adjudications as to the character and condition of the land, as against all third parties subsequently entering upon the land. *Hermocilla v. Hubbell*, 89 Cal. 5, overruled, on this point.

APPEAL from an order of the Superior Court of Tuolumne County granting a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

J. B. Curtin, for Appellant.

J. P. O'Brien, for Respondent.

VAN DYKE, J.—This action is to determine conflicting claims to a tract of land, being a portion of section 36, township 2 north, range 13 east, Mount Diablo meridian, containing six hundred acres, located in Tuolumne county.

On September 1, 1870, the official United States survey of said township was completed, and the lands therein sectionized. On the eighteenth day of February, 1871, the official plat of said township was approved by the United States surveyor general for California, and filed in his office. In this official plat of said township section 36 was marked and returned as being agricultural land and unoccupied. On the seventh day of December, 1871, the commissioner of the general landoffice directed the register of the United States landoffice at Stockton, in which district said land was located, to withhold from sale or disposal, among other lands, said township 2; and on April 27, 1880, the secretary of the interior, by an order, revoked said withdrawal,

and thereafter on September 6, 1884, the register of said United States landoffice issued to the state of California his certificate in due form, reciting that there were no persons occupying or in possession of any portion of said section 36, and there were no homestead pre-emptions or other valid claims thereto, or to any part thereof, adverse to the state of California. On the first day of September, 1890, the state of California issued to Robert B. Parks its patent in due form for the premises in controversy. Thereafter, on December 11, 1895, by proper mesne conveyance, the title to said lands was granted to and became vested in the plaintiff's intestate, Henry H. Saunders. That said Saunders thereupon entered into possession, and with his family occupied said tract of land up to the time of his death, June 20, 1897, and the plaintiff thereafter continued in such possession. In August, 1896, defendants Elder and Maguire entered upon a portion of said described lands and commenced to run a tunnel and work a quartz claim, and thereupon filed a notice of mining location, designating the same as "the north extension of the La Purisima claim." This action was commenced in August, 1897. Defendants Elder and Maguire rely upon said mining location and contend that said land is mineral land and never passed to the state of California, and that the patent issued therefor is void. All the other defendants were defaulted. On the trial defendants offered "to prove that the land in controversy—namely, the north extension of the La Purisima quartz mining claim—was expressly excepted from the grant to the state of California by the act of Congress approved March 3, 1853, as the same is mineral land." Plaintiff's objection to this offer was sustained by the court, and judgment went for the plaintiff. Thereafter, upon motion of the defendants, the court granted a new trial on the ground, as stated in the order, "for the sole reason that the court erred in sustaining the objection to said defendants' Maguire and Elder offered evidence as to the mineral character of the land in controversy."

This appeal is from the order granting a new trial, and the question presented here is whether the court did or did not err at the trial in excluding the offered evidence.

The respondents rely upon *Hermocilla v. Hubbell,* 89 Cal. 5, in support of the order of the court granting them a new trial.

Although the facts in that case are different from those in this, still it must be confessed that said case furnishes support to the contention of respondents. The opinion seems to rely upon *Mining Co. v. Consolidated Min. Co.*, 102 U. S. 168, and it is said with reference thereto: "That decision is controlling and must be followed here. The question then remains, Were the disputed premises at the time of the grant mineral land—that is, known to be valuable for minerals?"

The facts as found in *Hermocilla v. Hubbell, supra,* were that during the year 1850, and continuously ever since, and when the said patent was issued on the tenth day of December, 1870, and at the time of the survey of said lands (being a portion of the sixteenth section), "they were and have been, and now are, known to be public mineral lands of the United States, having therein known valuable mineral deposits." Whereas, in the United States case, referred to by the commissioner as controlling, and to be followed by this court, the facts were that there were three mining claims on the land in controversy—one located in 1851, another one in 1853, and the other in 1863, the last being seven years before the public survey of the tract, which was in 1870. The mining patent was applied for on these locations nearly two years before the state patent was issued and subsequently and within a year thereafter the United States patent was issued on said mining locations. Hence the contest in that case was between two conflicting patents. Whereas, in *Hermocilla v. Hubbell, supra,* the contest was in the nature of a collateral attack upon a state patent, on the ground that the land was mineral land. It is said in the latter case: "The question then remains, "Were the disputed premises at the time of the grant mineral lands—that is, known to be valuable for mineral lands?" But another and equally important question seems to have been overlooked by the court in that case, and that is, By whom and at what time are the facts to be ascertained and determined as to the character of the land at the time of the grant, whether mineral or nonmineral? And another question of equal importance is as to the effect of a patent, issued by competent authority, purporting to convey such land.

The decisions of the supreme court of the United States upon both of these questions are so numerous and so uniform (and the

decisions of this court are in the same line, with few exceptions) that both questions now ought to be considered well settled. The first is, that by the laws of Congress providing for the patenting of certain public lands, upon the ascertainment of certain facts, the proper officers of the land department of the general government have jurisdiction to inquire into and determine those facts; that is, if a large body of public lands be subject to sale or other disposition, but subject to reservation of such parts as may be found to be of a particular character, as swamp or mineral land, the land department has jurisdiction to determine the character of any part thereof, and its decision is conclusive. In *Steel v. Smelting Co.,* 106 U. S. 447, Mr. Justice Field, speaking for the court, says: "We have so often had occasion to speak of the land department, the object of its creation, and the powers it possesses in the alienation by patent of portions of the public lands, that it creates an unpleasant surprise to find that counsel, in discussing the effect to be given to the action of that department, overlooked our decisions on that subject. That department, as we have repeatedly said, was established to supervise various proceedings whereby evidence of a title from the United States to portions of the public domain is obtained, and to see that the different requirements of acts of Congress are fully complied with. Necessarily, therefore, it must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the nature of the land, and whether it is of a class which is open to sale. Its judgment upon these matters is that of a special tribunal, and is unassailable except by direct proceeding for its annulment or limitation. Such has been the uniform language of this court in repeated decisions."

In this case it was shown that the land in question was surveyed and sectionized—whereas the act of Congress directed that in case of mineral lands it should not be sectionized—and that the plat of survey showing the land to be agricultural land, in other words, not mineral, was returned and properly approved. As a further measure of precaution, and to allow abundant opportunity for a full investigation and ascertainment of the character of the land, the disposal of the same was suspended for a number of years, and finally, it having been determined that it was of the character of land subject to be granted to the state,

a certificate was issued by the proper United States authorities to the state of California, certifying its right to the section of land in question under the grant of 1853. The state's patent thereupon issued to the plaintiff's grantor long prior to the intrusion of the defendants for the purpose of mining. Under the rule just cited, this concluded the investigation as to the character of the land, except on a direct proceeding to set aside the patent on the ground of fraud or other invalidity.

The case of *Gale v. Best,* 78 Cal. 235, seems to have been overlooked—at any rate it is not noticed—in the preparation of the opinion in *Hermocilla v. Hubbell, supra.* In that case the plaintiff claimed under a patent to a tract of land under a railroad grant. The defendants claimed by right of possession, upon the ground that it was mineral land, and that all mineral lands are reserved in the grant of Congress to said railroad company. In affirming the judgment of the court below this court, after reviewing quite fully the cases bearing upon the question, says: "Our opinion is, that where a patent issues for public land under a law which provides for its disposition as agricultural land— either to a railroad company or to pre-emption or homestead claims—and there is no reservation in the law except a general one of mineral lands, and no reservation at all in the patent, then the patent must be considered as a conclusive determination by the government that the land is agricultural." This case was referred to and approved in *Dreyfus v. Badger,* 108 Cal. 58, which, it will be seen, was some time after the Hermocilla case relied upon by the respondent here. Dreyfus, the plaintiff, relied upon a state patent issued on state lieu school lands, and the defendant as a pre-emptioner, antedating his right as such prior to the patent by the state. In affirming the judgment of the lower court this court says: "A defendant may defeat an action of ejectment by showing that plaintiff has no title. But where a patent, regular on its face, has been issued by the government (federal or state) for land which it owns, under a law providing for the disposal of the land patented, upon the ascertainment of certain facts, the officers of the land department of the government have jurisdiction to determine such facts, and the issuance of a patent is, upon collateral attack, a conclusive declaration, as against all claiming under said government, that

the facts have been found in favor of the patentee. 'And this rule applies to the determination of the particular character of the land which is the subject of the patent.' This was expressly held in *Gale v. Best, supra,* where we alluded to the authorities at some length, and basing our conclusions on decisions of the supreme court of the United States (citing a number) we declared the law to be as above stated. These cases involved patents of the general government; but, upon principle, the rule applies with equal force to a patent of the state government. Moreover, it has been so expressly held in this court in *Doll v. Meador,* 16 Cal. 295, where it was decided that 'the patent is the record of the state, that the land was subject to location under the grant of the United States, and has been located,' and *Ah Yew v. Choate,* 24 Cal. 562, where it was held that the patent is also 'a record of the judgment of the state, by its officers duly appointed for that purpose, and that the conditions and characteristics of the land were not such as to constitute it mineral within the meaning of the provisions of the statute.' " *Irvine v. Tarbat,* 105 Cal. 237, is to the same effect, and is referred to and approved in *Dreyfus v. Badger, supra.*

To quote from the numerous adjudicated cases in the United States supreme court would be a waste of time and lengthen this opinion beyond reasonable limits, and it will be sufficient merely to refer to some of them. (*Steel v. Smelting Co., supra; St. Louis Smelting Co. v. Kemp,* 104 U. S. 644; *French v. Fyan,* 93 U. S. 169; *Barden v. North Pac. R. R. Co.,* 154 U. S. 288; *Wright v. Roseberry,* 121 U. S. 488; *Heath v. Wallace,* 138 U. S. 573; *McCormick v. Hayes,* 159 U. S. 332; see, also, *Cowell v. Lammers,* 10 Saw. 250.)

The cases relied upon by the respondent when examined, it will be seen, do not conflict with the general tenor of the decisions already cited. In those cases the lands in question were shown not to have been subject to sale or disposition, at the time the right alleged accrued on which the patent was issued, and the patents therefore were issued without authority of law. For instance, *Burfenning v. Chicago etc. Ry. Co.,* 163 U. S. 321, involved title to certain islands in the Mississippi at Minneapolis. At the date of the homestead selection in that case, on which

the patent was issued, these islands were within the limits of said city; and the invalidity of the patent was based upon the fact that "lands included within the limits of any incorporated town or selected as the site of a city or town" were by the laws of Congress excluded from the right of pre-emption and homestead claims. The court, of course, sustained that contention on the ground that the action of "the land department cannot override the express will of Congress or convey away public lands in disregard or defiance thereof." At the same time the court announced this as a rule: "It has undoubtedly been affirmed over and over again that in the administration of the public lands system of the United States questions of fact are under the consideration and judgment of the land department, and that its judgment thereon is final. Whether, for instance, a certain tract is swamp land or not, saline land or not, mineral land or not, presents a question of fact not resting on record, dependent on oral testimony; and it cannot be doubted that the decision of the land department one way or the other, in reference to these questions, is conclusive and not open to litigation in the courts, except in those cases of fraud, et cetera, which permit any determination to be re-examined.") Citing *Johnson v. Towsley,* 13 Wall. 72; *Smelting Co. v. Kemp, supra; Steel v. Smelting Co., supra; Wright v. Roseberry, supra; Heath v. Wallace, supra; McCormick v. Hayes, supra.*)

As already stated, and held in numerous cases, the grant by Congress to this state of the sixteenth and thirty-sixth sections, by the act of Congress of 1853, was a grant *in præsenti,* and if at that time there were existing no known minerals, or other exceptions noted in the grant why the lands should not pass to the state, it at that moment became the land of the state. The investigations of the officers of the land department in this case show that the land in question did not fall within any of the exceptions or limitations contained in the act; and subsequently, and long prior to any claim on the part of the defendants, the land was properly certified to and patented by the state to the plaintiff's grantor. Any rule which would permit intrusion upon the premises so conveyed and patented by the state, under such circumstances, long after the lands had passed

into the hands of presumably innocent third parties for value, would be a reproach to our laws and jurisprudence.

If such claims as that presented by the defendants here were sanctioned by the court, a patent to lands in this state, instead of being a muniment of title, would simply be an invitation to parties to invade the premises for the purpose of ascertaining whether facts and conditions existed prior to the grant or patent so as to avoid the same; and it would be the same whatever the nature of the land might be. In case of a patent to mining lands, an investigation could be had years after the date of the patent, and after the title to the ground had passed to innocent third parties, to determine whether it was not agricultural land, and more valuable for that purpose than for mining; or in case of a pre-emption or homestead claim, patented by the United States, an investigation could be set on foot at any period, and as against any party, whether innocent or otherwise, who might be the holder of the title, to ascertain whether the land was, at the initiation of the claim on which the patent is based, of the character subject to pre-emption or homestead—for instance, that it was mineral land, or swamp or overflowed land, or any other class falling within the exceptions specified in the laws of Congress. Such a condition as this would be simply intolerable, and there would be no confidence or certainty in land titles in this state.

The court below properly sustained the objection to the offered testimony, and its judgment was correct, and should have been allowed to stand.

The order granting a new trial is reversed.

Garoutte, J., Harrison, J., McFarland, J., Temple, J., Henshaw, J., and Beatty, C. J., concurred.