[Sac. No. 626.    Department One.—September 18, 1900.]

## GEORGE E. BATES, Appellant, v. H. D. HALSTEAD, Respondent.

SWAMP AND OVERFLOWED LAND—IRREGULAR PLATTING AND LISTING TO STATE—MEANDERING LINE—CHARACTER OF LAND—CONCLUSIVENESS OF DETERMINATION.—An irregular platting and listing of swamp and overflowed land to the state, not conforming to the requirements of the act of Congress, relating to legal subdivisions of land, but bounding the land platted and listed by a meandering line which excluded from its limits the smaller portion of some legal subdivisions and included therein the smaller portion of other legal subdivisions, is nevertheless a conclusive adjudication that all of the lands so platted and listed are swamp and overflowed, and that all of the lands excluded from the plat are not swamp and overflowed, but belong to the United States.

ID.—FEDERAL AND STATE PATENTS—SMALLER PART OF LEGAL SUBDIVISION.—A patent from the United States of the smaller part of a legal subdivision of land excluded from the limits of such meandering line will prevail over a state patent granting the major part of the same legal subdivision as swamp and overflowed lands within the limits of the meandering boundary.

ID.—ACTION TO QUIET TITLE—MISTAKE OF LAND DEPARTMENT NOT INVOLVED.—If it be conceded that the land department made a mistake in the manner in which the land was platted and listed to the state, such mistake cannot be reached in an action by the holder of the United States patent to quiet his title thereunder as against the holder of the state patent. Such action involves only the legal title to the land patented.

APPEAL from a judgment of the Superior Court of Tulare County and from an order denying a new trial. Wheaton A. Gray, Judge.

The facts are stated in the opinion of the court.

Freeman & Bates, and Hannah & Miller, for Appellant.

The decision of the secretary of the interior as to what land should vest in the state as swamp is evidenced by the approved list, and the secretary's decision is binding on this court. (*French v. Fyan*, 93 U. S. 169; *Hannibal etc. R. R. Co. v. Smith*, 9 Wall. 95; *Smelting Co. v. Kemp*, 104 U. S. 636; *Heath v. Wal-*

*lace,* 138 U. S. 573; *Steel v. Smelting Co.,* 106 U. S. 447; *Johnson v. Towsley,* 13 Wall. 72; *McCormick v. Hayes,* 159 U. S. 332; *Chandler v. Calumet etc. Min. Co.,* 149 U. S. 79.)

Charles G. Lamberson, for Respondent.

By virtue of the law of Congress, all of the land in any legal subdivision the greater part of which was returned on the plat as swamp and overflowed belonged to the state, and will be conveyed by its patent. (Act of Congress 1850, sec. 3.)   A party authorized to demand a patent has a vested title.   The state had a vested title under the act of Congress.   (*Wright v. Roseberry,* 121 U. S. 488; *Railroad Co. v. Smith,* 9 Wall. 95; *Tubbs v. Wilhoit,* 73 Cal. 61; *Kernan v. Griffith,* 27 Cal. 87.) The legal subdivisions contemplated by the act of 1850 are forty-acre tracts.   (*Hannibal etc. R. R. Co. v. Smith, supra; Robinson v. Forrest,* 29 Cal. 318; *Hogaboom v. Ehrhardt,* 58 Cal. 231.)   A patent issued in violation of law is not conclusive; but the patentee will hold it as trustee of the party entitled to the land. (*Johnson v. Towsley,* 13 Wall. 72; *Stark v. Starr,* 6 Wall. 402; *Lytle v. Arkansas,* 22 How. 193; *Garland v. Wynn,* 20 How. 6; *Lindsey v. Hawes,* 2 Black, 554.)

GAROUTTE, J.—This action is brought to determine adverse claims to certain real estate, described as lots 1 and 2 in section 32, township 8 south, range 24 east, comprising about thirty-one acres of land.   Plaintiff relies upon a patent from the United States issued to his grantor; and defendant relies upon a patent from the state under the swamp and overflowed act of Congress, passed September 28, 1850.   No evidence was introduced as to the character of the land in dispute, and the question here presented resolves itself into the proposition, as to whether or not these lands were ever platted and listed to the state as swamp and overflowed land under the aforesaid act of Congress.

The greater portion of the said section 32 was platted and listed to the state as swamp and overflowed land, and under the authority of *McCormick v. Hayes,* 159 U. S. 347, it must be held that if this land was not selected and listed to the state when the other portions of the section were selected and

listed, then it is government land, for such selection and listing is a determination to that effect. It is there said: "In the case now before us the selection by Lynn county, grantee of the state, prior to 1875, of swamp and overflowed lands in the very section of which the lands in dispute formed a part, without including the latter in such selection, together with the acquiescence in that selection by the interior department, and the selection by or under the direction of the secretary of the interior, and their certification to the state, first in 1858 and again in 1881, of the lands in dispute, as lands inuring under the act of Congress of May 25, 1856, to the Cedar Rapids and Missouri River Railroad Company, and, therefore, not lands embraced by the act of 1850, constituted a determination based on 'observation and determination' that the lands here in dispute were not swamp and overflowed."

Were these lands selected, platted, and listed as swamp and overflowed lands? Section 3 of the act of Congress of 1850, referring to the duty of the secretary of the interior, is as follows: "And be it further enacted that in making out a list and plats of the lands aforesaid all legal subdivisions the greater part of which is wet and unfit for cultivation shall be included in said lists and plats; but when the greater part of a subdivision is not of that character, the whole of it shall be excluded therefrom." It seems this section clearly contemplates that these lists and plats should comprise legal subdivisions of land only, but in the case at bar the plat comprises a large tract of land divided into legal subdivisions to a great extent, yet bounded upon some of its sides by an exterior meandering line. And it appears from the plat that various forty-acre subdivisions are divided by this meandering line, a majority in acreage of many of these subdivisions being without the meandering line, and a majority in acreage of many of them being within the limits of the line. Our attention has been called to no authority justifying this manner of making a plat, and we find nothing in the act even suggesting a meandering line which shall form the exterior boundary line of the land designated upon the plat as swamp and overflowed lands. Upon the contrary, the section of the act quoted clearly contemplates a different course of action upon the part of the

government officials. In this case these fractional lots 1 and 2 are outside of this meandering line and comprise about twelve and eighteen acres, respectively, in two different forty acre legal subdivisions of said section 32. This being their status, it is contended upon the part of respondent that, as matter of law, they are swamp and overflowed lands by reason of the provision of section 3 of the act of Congress already quoted.

We cannot bring ourselves to agree with the foregoing contention of respondent, for, upon the very face of the plat itself, the entire large tract of land within the meandering line appears, both by the color of the plat and the indorsements made thereon, to be swamp and overflowed lands. And, beyond this, the list of swamp and overflowed land in said section based upon said plat and returned to the state does not include the land here in controversy. Even if there be some doubt as to the intention of the government arising from the construction to be given the plat by reason of this meandering line dividing forty acre tracts, still there is no doubt but that the land in controversy was not listed to the state when the other portions of the same section were listed. This fact also indicates that the government officers placed a different construction upon the meaning of the plat from that which respondent here seeks to maintain. (See *Niles v. Cedar Point Club*, 175 U. S. 300.)

If the construction of respondent as to the meaning of this plat be a sound one, then all those portions of forty acre tracts situated within the meandering line, not amounting to twenty acres, are not swamp and overflowed lands, and do not belong to the state. Yet the plat, as we have shown, indicates explicitly in two distinct ways that all the land within the meandering line, is swamp and overflowed land, and presumably all of that land has been listed to the state as such. For these reasons it would seem that the status of all these fractional pieces of land within the meandering lines must be deemed forever settled by the acts and adjudications of the land tribunal. Yet there can be no question but that the land here involved stands in exactly the same relation to the law as those fractional pieces within the meandering line. If

CXXX. Cal.—5

the line fixes the character of the land within its limits it equally fixes the character of the land without its limits, that is, as to any forty-acre legal subdivision intersected by it.

It is here a question of legal title alone between these two claimants, and even for present purposes, if it be conceded that the land department made a mistake in the manner in which the plat introduced in evidence was made, yet that mistake cannot be reached in this action.

For the foregoing reasons the judgment and order are reversed and the cause remanded.

Van Dyke, J., and Harrison, J., concurred.