[L. A. No. 8101. In Bank.—October 5, 1925.]

In the Matter of the Registration of Title to Lands of GEORGE HARRY WALTZ et al., Petitioners. In re CHARLES HENRY BARLOW, Applicant and Appellant, v. SECURITY TRUST & SAVINGS BANK, Defendant and Respondent.

[1] ESTATES — MEANING OF "FEE SIMPLE." —"Fee simple" merely means that the interest of a given estate is inheritable and not subject to "conditions or collateral determination." Nor is the inheritable quality of the estate at all affected by the nature thereof.

[2] ID. — GRANT OF LAND WITH RESERVATION OF MINERAL RIGHTS — CHARACTER OF ESTATE.—Under the common law of England, as applied to a grant of land from which there is excepted and reserved to the grantor all minerals and rights in relation thereto,

---

1.  See 10 Cal. Jur. 601; 10 R. C. L. 649.

including "all oil, petroleum, asphaltum and like substances, and the right to mine, dig or bore for the same, and also all convenient rights of way and of storage over and within the surface of said lands," the estate held by the grantee being inheritable and not subject to any restriction as to heirs, etc. (as in fee-tail), is fee simple in its nature; and the fact that some rights of entry thereon for the purpose of mining in presumably all of its varied branches were possessed by another has no effect upon the inheritable quality of the estate remaining in the grantee.

[3] ID.—LAND REGISTRATION ACT.—Under such a grant, the grantee and the owner of the mineral rights is each the owner of a fee-simple estate; and such grantee is entitled to have his estate registered under the provisions of the Land Registration Act (Stats. 1915, p. 1932).

[4] ID.—COMMON LAW.—Lands originally held in fee simple according to the common law of England, and consequently inheritable, were nevertheless subject to an independent and wholly detached right existing in another person, to wit, the sovereign, to mine such lands, at least for gold and silver, and the exercise of such right by the sovereign in no way affected the fee-simple title of the owner of the surface of the land.

---

(1) 21 C. J., p. 919, n. 3, p. 921, n. 31.    (2) 21 C. J., p. 919, n. 99. (3) 34 Cyc., p. 603, n. 28.    (4) 40 C. J., p. 976, n. 53.

APPEAL from a judgment of the Superior Court of Los Angeles County. Harry R. Archbald, Judge. Reversed.

The facts are stated in the opinion of the court.

Jas. W. Bell for Appellant.

Newlin & Ashburn for Respondent.

HOUSER, J., *pro tem.*—The facts herein are in dispute. It appears that certain lands were granted to one Charles Henry Barlow, from which were reserved to the grantor and excepted from the grant all minerals and rights in relation thereto, including "all oil, petroleum, asphaltum and like substances, and the right to mine, dig or bore for the same, and also all convenient rights of way and of storage over and within the surface of said lands." Such

3.  See 22 Cal. Jur. 673.
4.  See 17 Cal. Jur. 275; 18 R. C. L. 1101.

property rights as were thus reserved by the grantor were subsequently conveyed to the Security Trust & Savings Bank.

Under the provisions of the Land Registration Act (Stats. 1915, p. 1932), Barlow joined with several other alleged owners of real property in the filing of a petition with the clerk of the superior court of Los Angeles County, wherein, pursuant to the provisions contained in said act, an order of the superior court was sought to be directed to the registrar of titles of said county to register, among other lands, those described in said petition as being the property of said Barlow. The Security Trust & Savings Bank filed an answer to the petition so far as it affected the lands in which said bank was interested as aforesaid, by which said bank opposed such proposed registration. Judgment on the issues raised by the petition and the answer was rendered in favor of the Security Trust & Savings Bank and Barlow has appealed therefrom.

Section 7 of the Land Registration Act provides, in part, that: "No mortgage, lien, charge, or lesser estate than a fee simple shall be registered unless the fee simple to the same land is first registered."

The basis of respondent's objection to the registration of Barlow's land was that his title being subject to the mineral rights of the respondent and, in the language of the Registration Act, being a "lesser estate than a fee simple," could not be registered.

In the case of *Wallace* v. *Harmstead,* 44 Pa. St. 492, may be found an exhaustive treatment of the general subject of tenures, wherein it is held, even as affecting lands in Pennsylvania, that the tenure is allodial and not feudal; and in the early case of *Matthews* v. *Ward,* 10 Gill & J. (Md. 1839) 443, it is laid down (syllabus) that: "After the Revolution, lands in this state [Maryland] be-· came allodial, subject to no tenure, nor to any services incident thereto . . . "

Notwithstanding such rule, it may be both argued by counsel and assumed by this court that the intention of the people in adopting by initiative the act in question was to follow the early English system of tenure and thereby to appropriate to the use and the construction of the statute the English terminology respecting the manner of acquir-

ing and holding lands. By so doing it becomes necessary to inquire into the meaning of the term "fee simple" and to determine its effect upon the act here under consideration.

In Bouvier's Law Dictionary "fee simple" is defined as "An estate of inheritance. Co. Litt. 1 b; 2 Bla. Com. 106. The word simple adds no meaning to the word fee standing by itself. But it excludes all qualification or restriction as to the persons who may inherit it as heirs, thus distinguishing it from a fee-tail, as well as from an estate which, though inheritable, is subject to conditions or collateral determination. 1 Washb. R. P. 51; Wright, Ten. 146; 1 Prest. Est. 420; Littleton, sec. 1."

[1] "Fee simple" therefore merely means that the interest of a given estate is inheritable and not subject to "conditions or collateral determination." Nor is the inheritable quality of the estate at all affected by the nature thereof. In Cooley's Blackstone, fourth edition, volume 1, page 514, after defining what is meant by the term "tenant in fee simple," it is said:

"Taking, therefore, *fee* for the future, unless where otherwise explained in this its secondary sense, as a state of inheritance, it is applicable to, and may be had in any kind of hereditaments, either corporeal or incorporeal. . . .

"The *dominicum* or property is frequently in one man, while the appendage or service is in another. Thus Gaius may be seised *as of fee* of a way leading over the land, of which Titius is seised *in his demense as of fee.*

"The fee-simple or inheritance of lands and tenements is generally vested and resides in some person or other; though divers inferior estates may be carved out of it. As if one grants a lease for twenty-one years, or for one or two lives, the fee-simple remains vested in him and his heirs; and after the determination of those years or lives, the land reverts to the grantor or his heirs, who shall hold it again in fee-simple. Yet sometimes the fee may be in *abeyance*, that is, (as the word signifies,) in expectation, remembrance, and contemplation in law."

[2] It thus appears that by the common law of England, as applied to the land here in question, the estate held by Barlow being unquestionably inheritable and not subject to any restriction as to heirs, etc. (as in fee-

tail), was fee simple in its nature; and the fact that some rights of entry thereon for the purpose of mining in presumably all of its varied branches were possessed by another, to wit, the Security Trust & Savings Bank, had no effect upon the inheritable quality of the estate remaining in Barlow.

It may be noted that, as heretofore indicated, the fee-simple estate of early England was never considered as absolute, as were lands in allodium,° but were subject to some superior on condition of rendering him service and in which superior the ultimate ownership of the land resided. (1 Cooley's Blackstone, 4th ed., p. 512.) One of the incidents to such property rights in the sovereign was that of the privilege of taking as his own any mines of gold or silver discovered thereon. (1 Plowd. 310; 2 Coke Inst. 577; 3 Kent's Com. 378-n; 1 Lindley on Mines, 3d ed., p. 7; *Hicks* v. *Bell*, 3 Cal. 219; *Stoakes* v. *Barrett*, 5 Cal. 36; *Moore* v. *Smaw*, 17 Cal. 199, 222 [79 Am. Dec. 123].) As an independent proposition and but remotely connected with the solution of the question here involved it has been held, overruling the case of *Hicks* v. *Bell*, 3 Cal. 219, that the mines of gold and silver found in public lands of this state are not the property of the state by virtue of her sovereignty. (See, also, *Doran* v. *Central Pac. R. R. Co.*, 24 Cal. 245; *Fremont* v. *Seals*, 18 Cal. 433; *Ah Hee* v. *Crippen*, 19 Cal. 491.)

In Thompson on Real Property, volume 1, section 87, it is said: "Since minerals in place are part of the land, the owner of the fee in the land has the absolute right of property in the mines and quarries beneath the surface, (citing cases) and all the mineral substances, while thus in place, are things of a real, and not a personal character (citing cases). As we have seen, that part of the land consisting of minerals, or specified minerals, may become the subject of separate ownership by grant of the minerals by the owner of the land, or by a grant of the land with an exception of the minerals, and in either case an estate in fee simple is created in the minerals, as corporeal hereditaments. (Citing cases.) "

[3] It follows that with reference to the respective rights of the parties litigant to the lands in question, each was the owner of a fee-simple estate.

[4] So far as the term "fee simple" may be considered as connected with the tenure of the lands in question the conclusion here intended to be reached .is that lands originally held in fee simple according to the common law of England, and consequently inheritable, were nevertheless subject to an independent and wholly detached right existing in another person, to wit, the sovereign, to mine such lands, at least for gold and silver; and that the ,exercise of such right by the sovereign in no way affected the fee-simple title of the owner of the surface of the land. And so in the instant case, a "fee-simple" title may exist in Barlow as to the surface of the lands in question, without in any manner being affected by the right of the Security Trust & Savings Bank (analogous to that of the early English sovereign with respect to English lands) to "mine, dig or bore" for mineral substances thereon and therein.

By section 5 of the statute here under consideration it is provided that "all land may be brought under the operation of this act by the owner or owners of any estate or interest therein, whether legal or equitable . . ." And in section 7 of the act, immediately following the provision heretofore quoted herein, to the effect that "no lesser estate than a fee-simple estate shall be registered unless the fee simple' is first registered," the language of the statute is that "It shall not be an objection to bringing land under this act, that the estate or interest of the applicant is subject to any outstanding lesser estate, mortgage, lien, or charge; but every such lesser estate, mortgage, lien, or charge shall be noted upon the certificate of title and the duplicate thereof, . . ."

It appearing that the estate held by Barlow is in fact "fee simple," it was entitled to registration under the precise terms of the act.

The judgment is reversed.

Richards, J., Lennon, J., Lawlor, Acting C. J., Seawell, J., Shenk J., and Waste, J., concurred.

Rehearing denied.