[L. A. No. 8239. In Bank.—September 21, 1926.]

## ORD LAND COMPANY, Respondent, v. ALAMITOS LAND COMPANY, Appellant.

[1] TIDE-LANDS—ACQUIREMENT BY STATE—RIGHT TO SELL.—California, when admitted to the Union as a state, became vested with title to all tide-lands within its borders as an attribute of sovereignty, and as an exercise of the sovereign prerogative it may, subject to constitutional limitations, provide for the sale and sell into private ownership all such lands within its borders to which it has title.

[2] ID.—STATE PATENT TO LANDS—EFFECT OF.—A state patent purporting to cover tide-lands can have no greater force or effect than to transfer *tide-lands* to the patentee named therein, and is invalid and void in so far as it attempts to transfer uplands not within the tide-lands of the state.

[3] ID.—DETERMINATION OF CHARACTER OF LANDS—ADJUDICATION BY STATE OR STATE OFFICERS—COLLATERAL ATTACK.—An *ex parte* adjudication by the state or state officers that certain lands are tide-lands is not conclusive upon the federal government and may be collaterally attacked in any action; and, therefore, the prior issuance of a state patent describing the lands covered thereby as tide-lands is not determinative of the character of the lands as against the federal government or its patentee claiming under a patent subsequent in point of time.

[4] ID.—CONFLICTING PATENTS—ADJUDICATION OF RIGHTS.—Where conflicting patents to land are issued by different sovereignties neither should be held to conclusively determine the character of the land involved, but that question should be adjudicated by a court of competent jurisdiction.

[5] ID.—CHARACTER OF LANDS—DETERMINATION OF—TIME—EVIDENCE. In an action to determine the rights to certain lands, which

---

1.  See 26 Cal. Jur. 315.
2.  See 21 Cal. Jur. 750.
3.  See 21 Cal. Jur. 752.

plaintiff claims under a federal patent and defendant claims as tide-lands under a state patent, the question as to whether or not the lands were tide-lands is to be determined as of the time the state was admitted to the Union; and evidence touching the condition of the land subsequent to that time was admissible for that purpose, and where the evidence is conflicting the determination of the trial court is conclusive on appeal.

(1) 29 Cyc., p. 356, n. 30 New, p. 357, n. 40.   (2) 29 Cyc., p. 361, n. 61 New.   (3) 29 Cyc., p. 367, n. 35 New.   (4) 29 Cyc., p. 367, n. 35 New; 32 Cyc., p. 1039, n. 7 New.   (5) 29 Cyc., p. 367, n. 35 New.

APPEAL from a judgment of the Superior Court of Orange County.  R. Y. Williams, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Ward Chapman and L. M. Chapman for Appellant.

Scarborough, Forgy & Reinhaus and W. R. Bacon for Respondent.

THE COURT.—The Ord Land Company instituted this action against the Alamitos Land Company to quiet its title to an irregularly shaped strip of land which stretches along a peninsula of sand-dunes between the shore of the ocean and certain marshy tide-lands adjacent to Anaheim Landing in Orange County.  Plaintiff bases its claim of title upon a patent issued January 13, 1916, by the United States government to one John C. Ord, the plaintiff's predecessor in interest.  The defendant's adverse claim, on the other hand, is founded upon a tide-land patent issued to it by the state of California on April 4, 1901.  As these two patents overlap this action was commenced to adjudicate the respective rights of the parties to the strip of land which is common to both patents.  The sole and only issue tried in the lower court was whether or not the controverted strip of land, now covered by sand-dunes, was originally tide-land.  Upon the conclusion of the trial, at which both oral and documentary evidence was introduced, the court found that the strip in question was never tide-land; that the state of California was, therefore, without right or title thereto and could not issue a patent therefor; and that said land was a part

of the public domain of the United States and consequently passed to the plaintiff's predecessor in interest by virtue of the federal patent. Judgment in accordance with these findings was entered in favor of the plaintiff quieting its title as prayed for in the complaint. This appeal is prosecuted from said judgment.

[1] Before taking up and considering the contentions advanced on appeal it will be well to state a few general propositions upon which the parties are in accord. It is conceded by both sides that California, when admitted to the Union as a state on September 9, 1850, became vested with title to all tide-lands within its borders as an attribute of sovereignty; that the state of California, as an exercise of the sovereign prerogative, may, subject to constitutional limitations, provide for the sale of and sell into private ownership all tide-lands within its borders title to which is in it at the time of the issuance of the patent; and that if the land in controversy in the instant case was tide-land at the time of the admission of California as a state then the state could properly dispose of said land by patent.

The appellant contends: "1. There is no evidence to support the finding of the court that the lands in controversy were never tide-lands.

"2. That the findings of the county surveyor, charged with the duty of making the survey for the purpose of ascertaining and locating the tide-lands offered for sale, is conclusive as against the United States Government as well as all other parties."

If appellant's second contention is found to be meritorious the necessity of considering the first will not present itself. With this in mind, therefore, we will treat of the appellant's contentions in inverse order.

In support of its second contention the appellant urges that "the [trial] court had not the power to go back of the state tide-land patent which is the senior patent; that the state had vested in the surveyor general, acting through county surveyors, the power to ascertain and locate the tide-lands of the state, and having done so, in this instance through the survey and the issuance of the patent, that determination is conclusive, and the patent therefor could not be impeached by evidence tending to show that the surveyor had erroneously included lands which are not tide-lands."

In short, the appellant contends that as between a state and the federal government the patent first in point of time is binding and conclusive in determining the character of land covered thereby. Or, ₋tated concretely, it is urged that the issuance of a state tide-land patent precludes the subsequent issuance of a federal patent covering the same land even though the prior state patent was founded on an erroneous conclusion of a county surveyor and did not in fact cover tide-lands.

[2] We cannot subscribe to such a doctrine. A state patent purporting to cover tide-lands can have no greater force or effect than to transfer *tide-lands* to the patentee named therein. Such a patent is valid and effective only so far as it concerns tide-lands, title to which is in the state at the time of the issuance thereof. On the other hand, it is invalid and void in so far as it attempts to transfer uplands not within the tide-lands of the state. [3] An *ex parte* adjudication by the state or state officers that certain lands are tide-lands is not conclusive upon the federal government and may be collaterally attacked in any action. Therefore, the prior issuance of a state patent describing the lands covered thereby as tide-lands is not determinative of the character of the lands as against the federal government or its patentee claiming under a patent subsequent in point of time.

The following principles announced in 26 Am. & Eng. Ency. of Law, 2d ed., at pages 347, 348, though concerned with swamp and overflowed lands, would seem equally applicable to tide-lands: "A patent from the state for lands determined by it in *ex parte* proceedings to be swamp and overflowed lands and inuring to it under the Swamp Act of 1850 is not conclusive as to the character of the lands patented as against one who connects himself with the title of the federal government. Such person may show that such lands were not in fact swamp and overflowed lands, and that, therefore, the state could grant no title thereto, and the patent is neither presumptive nor *prima facie* evidence that such was the character of the land as against one claiming under the federal government. . . .

"The federal government has no power by *ex parte* proceedings in the land department to determine what were and what were not swamp and overflowed lands so as to pass to the states under the Swamp Act of 1850 and bind thereby

the state and persons claiming under the state. Therefore, a survey at the instance of the federal government by which particular land is designated as high land is not conclusive as against the state or its grantees that the land was not in fact swamp and overflowed land.'' (Citing authorities.)

In the syllabus to the case of *Edwards* v. *Rolley*, 96 Cal. 408 [31 Am. Rep. 234, 31 Pac. 267], also concerned with swamp and overflowed lands, it is stated that ''A state patent issued for land which the state has no authority to dispose of is void, and may be collaterally attacked in any action, and its operation as a conveyance defeated, . . . ''

The fact that the title to swamp and overflowed lands within their borders came to the several states by virtue of a grant from the federal government (9 U. S. Stats. 519), judicially interpreted to be a grant *in praesenti,* whereas title to tide-lands within their borders inured to them as an attribute of sovereignty upon their achieving statehood, does not, in our opinion, call for the application of different principles in this respect. It would be a novel doctrine and not in accord with accepted principles to declare that the prior issuance of a patent by one sovereignty is conclusive upon another sovereignty as to the character of the lands included therein. As stated in *Knight* v. *United States Land Association,* 142 U. S. 161, 176 [35 L. Ed. 974, 12 Sup. Ct. Rep. 258, 262, see, also, Rose's U. S. Notes] , ''a patent is void at law if the grantor state had no title to the premises embraced in it . . . '' **[4]** Where conflicting patents are issued by different sovereignties neither should be held to conclusively determine the character of the land involved. That question should be adjudicated by a court of competent jurisdiction.

The authorities cited by appellant are not at variance with this conclusion, for they merely hold that a patent is, in the absence of collusion or fraud, conclusive as to the character of the land involved upon the sovereignty issuing it and subsequent patentees claiming under said sovereignty. Appellant is correct, therefore, in stating that if ''the controversy here was between patentees claiming under the same source of title—that is, either from the state or the federal government—it would not be denied that the senior patent takes precedence and would be conclusive.'' As already indicated, however, we are of the opinion that this latter principle is inapplicable where the patentees claim

under different sovereignties. This being so, appellant's second contention must be held to be without merit.

There remains for consideration the appellant's first contention, namely, that there is no evidence to support the finding that the land common to both patents was not tide-land at the time California became a state.

Appellant's witnesses testified in substance that they knew and were more or less familiar with the land in question from the year 1877 to the time of the trial; that the topography of the strip of land in controversy and the sand-dunes in close proximity thereto is changing constantly and materially from the effects of winds and the other elements; and that the greater part of the winds blow from the ocean toward the tide-land and bay, causing the sand-dunes to move perceptibly inland and to encroach upon said tide-land and bay.

Respondent's witnesses, on the other hand, testified to the effect that no noticeable or material change has occurred in the position or height of the sand-dunes from the year 1877; that the width of the sand spit has not varied to any appreciable extent during the period from 1877; and that the width of the tide-land marsh between the bank of the slough and the sand-dunes had remained practically constant throughout the years.

The trial court, after personally viewing the controverted strip of land in company with counsel for both sides, found on this conflicting evidence that said land was not and never had been tide-land.

[5] It is urged by appellant that there is no evidence tending to show the condition or character of the land on September 9, 1850, when California became a state, and that the evidence touching the condition of the land subsequent to 1850 was not admissible. The authorities referred to by appellant indicate that the condition of the land at the time California achieved statehood determines its character. (*Pollard* v. *Hagan,* 3 How. (U. S.) 212 [11 L. Ed. 565, see, also, Rose's U. S. Notes]; *Doe* v. *City of Mobile,* 9 How. (U. S.) 451, [13 L. Ed. 212].)

We are in accord with these authorities and are of the opinion that the character of the controverted land must be determined as of September 9, 1850. However, we are not prepared to hold, in the absence of direct evidence bearing on

the character and condition of the land on said date, that evidence tending to show either a constant or changing condition of the land from 1877 to the time of the trial would not be admissible to assist in arriving at a conclusion as to its character and condition in 1850. Such evidence was tendered by both sides and the trial court correctly allowed it in to ascertain whether the character of the land had changed with the years. The evidence being in conflict upon this point, and the trial court having personally viewed the premises and concluded that the strip was never tide-land, we are of the opinion that such conclusion must stand.

The judgment appealed from is affirmed.