[L. A. No. 15141. In Bank.—September 15, 1936.]

SARAH ANNE NEWCOMB, Respondent, v. CITY OF
NEWPORT BEACH (a Municipal Corporation), Ap-
pellant.

Roland Thompson for Appellant.

Edward V. Jones and James W. Bell for Respondent.

SEAWELL, J.—Plaintiff brought this action against the City of Newport Beach to quiet her title to two lots within the bounds of said city. The court found that the lots were tidelands in Newport Bay. The judgment provided that plaintiff was the owner in fee of said lots, "subject to an easement in favor of the public for right of navigation and fishery only, but without any right in the public or any public agency to make any physical changes or improvements therein or thereon without the exercise of eminent domain". It further adjudged that defendant city had no right, title or interest in said land.

The city has appealed from the judgment. It contends that in view of the finding that the lands are tidelands subject to the public trust, it is entitled to make changes and improvements thereon in the interest of the public trust, as administrator of said trust by virtue of a legislative grant to the city from the state in 1927 of the state's interest in tidelands of Newport Bay. Defendant city further contends that the title of those through whom plaintiff claims was divested by certain tax sales, and that as purchaser at said sales it owns title to said lots in fee.

Plaintiff deraigns her title through a patent issued by the state of California in 1907 to George W. Harbou. Said patent was issued under the provisions of sections 3440–3443 of the Political Code, providing for the sale by the state of its swamp and overflowed, salt marsh and tidelands. The lots were described in said patent as tidelands belonging to the state by virtue of her sovereignty, and were conveyed to Harbou by reference to a plat known as Location 267, State Tidelands. As to the patentee and plaintiff, successor in interest to said patentee, said patent is a conclusive determination of the nature of said lots, and establishes their character as tidelands on navigable waters, title to which vested in the state of California by virtue of her sovereignty on her admission to the Union in 1850. (*Ord*

*Land Co.* v. *Alamitos Land Co.,* 199 Cal. 380 [249 Pac. 178]; *Saunders* v. *La Purisima etc. Co.,* 125 Cal. 159 [57 Pac. 656]; 21 Cal. Jur. 752.)

▮ Defendant city also offered oral testimony as to the tideland character of the lots in question. For the purpose of determining whether lands vested in the state by virtue of her sovereignty it is their condition as tidelands at the time of the admission of California into the Union in 1850 which is material. (*Ord Land Co.* v. *Alamitos Land Co., supra.*) None of the witnesses herein was familiar with the lands as early as 1850, but their testimony as to the condition of the lots at a later date was material in arriving at a conclusion as to their status at the earlier time. (*Ord Land Co.* v. *Alamitos Land Co., supra.*) The federal government has established pierhead and bulkhead lines in said bay as a navigable harbor. In the light of the evidence the trial court lawfully could reach no other conclusion than that the lots were tidelands on navigable waters. ▮ It is true that Newport Bay was not included in the list of navigable waters in section 2349 of the Political Code, until 1909, but this does not mean that prior to that date it was not navigable in fact.

▮ The effect of the patent issued by the state to Harbou, plaintiff's predecessor, was to vest in him title to the tidelands in question subject to the public easement for navigation, commerce and fishing. (*People* v. *California Fish Co.,* 166 Cal. 576 [138 Pac. 79]; *Forestier* v. *Johnson,* 164 Cal. 24 [127 Pac. 156].) Said patent was issued to Harbou prior to the enactment in 1909 of section 3443a of the Political Code, which withholds from sale by the state tidelands on navigable waters. ▮ The prohibition contained in section 3, article XV of the Constitution forbidding alienation to private persons of tidelands within two miles of any incorporated municipality does not invalidate the patent herein. Although the patent was not issued until after the incorporation of the City of Newport Beach, on September 1, 1906, prior thereto Harbou had applied for the patent, paid the purchase price and received a certificate of purchase. In such circumstances a valid contract for the purchase of the land arose, which was not abrogated thereafter by incorporation of the city. (*People* v. *Banning Co.,* 166 Cal. 635 [138 Pac. 101].)

Upon the trial of the case herein, plaintiff introduced as exhibits 7 and 9 copies of the plat of the official survey on file in the United States General Land Office of the swamp and overflowed lands in fractional township No. 6 south, range No. 10 west, San Bernardino base and meridian. Lots 1 and 2 of section 34 in said township as shown on said plat are not the lots which are the subject of this action. Lot 1 of the swamp and overflowed lands in section 34, as delineated on said map, contains 1.42 acres. It is separated from lot 2 in section 34 on said map, containing 43.91 acres, by an arm of the bay. The two lots involved in the instant action are also located in section 34. They are designated lots 1 and 2 in said section 34 on the plat of tidelands on file in the state surveyor general's office, entitled Location 267, State Tidelands, and contain, respectively, 14.16 and 5.10 acres. They lie south of lots 1 and 2, swamp and overflowed lands.

Said official plat of swamp and overflowed lands was prepared for purposes of segregating the lands which passed from the United States to ·the state of California under the Arkansas Swamp Land Act of 1850. (U. S. Rev. Stats., sec. 2479; 21 Cal. Jur. 681.) The lands which passed under said act were lands other than tide and submerged lands on navigable waters. Title to tide and submerged lands on navigable waters vested in the states not by virtue of grant from the federal government, but by virtue of their sovereignty. The lands which passed to the state by grant under the Swamp Land Act were thereafter subject to absolute alienation by the state, free of any public trust for navigation. The official surveys of swamp and overflowed lands are a conclusive determination as to the lands which passed to the state under the act. (*Foss* v. *Johnstone*, 158 Cal. 119 [110 Pac. 294]; *Bates* v. *Halstead*, 130 Cal. 62 [62 Pac. 305, 80 Am. St. Rep. 70].) The lands which are the subject of this action are not delineated as swamp and overflowed lands on the official survey. Rather, they are marked upon the state official map entitled Location 267, State Tidelands, as tidelands, and were patented to plaintiff's predecessor in interest as such.

In the instant case the court applied the principle that a grant of tidelands under section 3440 of the Political Code, is subject to the public trust, in that it found that

plaintiff was the owner of the fee in the lots "subject to an easement in favor of the public for navigation and fishery only". But it further found that there was no "right in the public or any public agency to make any physical changes or improvements therein or thereon without the exercise of eminent domain". This latter holding is erroneous under our decision in *People* v. *California Fish Co.*, 166 Cal. 576 [138 Pac. 79]. It was there held that the proper judgment for a patentee of tidelands under section 3440 of the Political Code, is that "he owns the soil, subject to the easement of the public for the public uses of navigation and commerce, and to the right of the state, as administrator and controller of these public uses and the public trust therefor, to enter upon and possess the same for the preservation and advancement of the public uses, and to make such changes and improvements as may be deemed advisable for those purposes". (166 Cal. 576, 598.) A conveyance of tidelands under section 3440 of the Political Code, "does not convey or affect the public rights of navigation and fishery, or the power of the state to regulate and control the same and *alter and improve the premises in the interest of navigation,* but transferred only the title to the soil, subject to said public rights and powers". (*People* v. *Southern Pacific R. R. Co.*, 166 Cal. 627, 628 [138 Pac. 103].) (Italics ours.)

The paramount right to make improvements in the interest of navigation and commerce is in the federal government as an incident of the interstate and foreign commerce power. (*Atwood* v. *Hammond,* 4 Cal. (2d) 31, 43 [48 Pac. (2d) 20].) In the absence of action by the federal government, the state has full power over waters and tidelands within its jurisdiction. A conveyance of tidelands by the state under section 3440 of the Political Code, did not defeat either the right of the federal government or the right of the state thereafter to make changes and improvements in the interest of commerce and navigation without the exercise of the power of eminent domain, including the right to deepen the water over such lands by dredging. (*Lewis Blue Point Oyster Cultivation Co.* v. *Briggs,* 229 U. S. 82 [33 Sup. Ct. 679, 57 L. Ed. 1083].)

The state may delegate to municipalities the right to administer the public trust in waters in proximity to

such municipalities, subject, of course, to the paramount right of the federal government. This may be accomplished either by a delegation of the right to make harbor improvements, without a conveyance of the legal title in the land (*People* v. *Banning Co.*, 166 Cal. 630 [138 Pac. 100]), or by a grant subject to the public trust. (*Atwood* v. *Hammond*, 4 Cal. (2d) 31, 37 [48 Pac. (2d) 20].) In the instant case the state by legislative act in 1927 granted to the City of Newport Beach all its right, title and interest in tide and submerged land of Newport Bay not theretofore conveyed to the City of Newport Beach or the county of Orange, in trust to establish, improve and conduct a harbor. (Stats. 1927, p. 125.) As to plaintiff's lots, the legal title to which had passed from the state under the patent to Harbou in 1907, this grant vested in the city the right to administer the public trust pertaining to said lands, which trust continued to exist after the grant to Harbou, and, as an incident thereto, the right to make changes and improvements in the interests of navigation and commerce without the exercise of eminent domain. It follows that the trial court was in error in denying such right. The further holding that the City of Newport Beach was without right, title or interest in the plaintiff's land also denies the rights of said city as administrator of the public easement, under authority from the state, and for this reason is erroneous.

 It appears that plaintiff's lots at low tide constituted an island in Newport Bay, but at high tide were completely submerged to such a depth, the court found, that rowboats might navigate over them. Plaintiff heretofore made a motion to dismiss the appeal herein on the ground that the controversy had become moot for the reason that pending the appeal the lots had been dredged and were submerged at all times, with the result that the subject of the action, so she averred, was completely destroyed. The dredging of the land did not render moot the question as to the title of said submerged lands, and the right of the city to make changes and improvements thereon, which are the issues involved in this action.

 Nor did the defendant city, as urged by plaintiff, waive any rights it might have in the lands by alleging in answer to an injunction suit brought by plaintiff to restrain

said dredging pending determination of this appeal that the work of dredging was being done not under its authorization, but by contract of the federal government with the dredging company. The federal government thereafter obtained a preliminary injunction in the federal court against plaintiff herein, restraining her from further prosecution in the state court of her suit to enjoin the dredging which was being done under contract with the federal government. The final disposition of the federal court suit does not appear. The federal government is not a party to the instant action, and, of course, would not be bound by any judgment herein. It may be that the federal government and the city are cooperating in a program of harbor development. Although the federal government may have done the dredging, the city may at some future time wish to make further changes or improvements in the interests of navigation in or on the plaintiff's lots which do not conflict with federal regulations. A judgment which in general terms denies to the city the right to make any changes and improvements is, therefore, erroneous.

▇▇▇ The city is not barred from asserting the public easement in these lands, and its right to make improvements and changes in the administration of this easement without the exercise of eminent domain, by reason of registration of title thereto under the Torrens Title Law. (3 Deering's Gen. Laws [1931], p. 4842.) Harbou was the owner of a fee-simple estate subject to registration. (*In re Waltz*, 197 Cal. 263 [240 Pac. 19].) He commenced the registration proceeding in 1923, and the decree for registration was rendered in 1924. At that time the state had not granted its interest in these tidelands to the City of Newport Beach. Section 13 of the Torrens law provides that when "land borders on a navigable stream or on an arm of the sea, or if it otherwise appears from the application or the proceedings that the state may have a claim adverse to that of the applicant, notice shall be given in the same manner [that is, by delivering a copy of the notice of the petition] to the attorney general".

Harbou failed to allege in his petition that the lots were tidelands. The state was not named as a party, nor was notice served on the attorney-general. The state did not appear, and the decree made no adjudication with reference to

its rights. ▮ Although a Torrens title registration decree is *in rem* (sec. 16), and conclusive against private persons whether named in the judgment or not, it will not conclude the state or other public agencies or mandatories unless they are brought in by appropriate pleadings and service of process. It has been so held with reference to proceedings to quiet title under the McEnerney Act, where the decree is also *in rem*. (*Kearney Investment Co.* v. *Golden Gate Ferry Co.,* 198 Cal. 560 [246 Pac. 322], and *Berton* v. *All Persons,* 176 Cal. 610 [170 Pac. 151].) The reasoning of said decisions is directly applicable to proceedings under the Torrens law. The public right in state tidelands cannot be cut off through a suit to which the state is not a named party, and in which it is not served with process.

▮ Furthermore, section 34, subdivision 2, provides that the certificate of title is subject to ''all land embraced in the description contained in the certificate which has theretofore been legally dedicated as or declared by a competent court to be a public highway''. It has been held that navigable waters are public highways. (*People* v. *Gold Run D. & M. Co.,* 66 Cal. 138, 146, 147 [4 Pac. 1152, 56 Am. Rep. 80]; *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373, 383 [103 Pac. 207].)

▮ The City of Newport Beach was named as a party in the registration proceedings as owner of the adjoining land. At that time it had not succeeded to the state's interest in these tidelands, and the decree cannot bind it as to its interest acquired subsequent to the decree of registration by grant from the state in 1927.

This brings us to the further contention of defendant city that it is not only administrator of the public trust pertaining to plaintiff's lots as tidelands, but that it has acquired plaintiff's title thereto by purchase for delinquent taxes assessed against the owner of said lots in 1922 by the City of Newport Beach, and by a later purchase by it in 1931, upon sale by the tax collector of Orange County for delinquent taxes due said county.

▮ The sale to the City of Newport Beach for delinquent taxes assessed in 1922 took place in July 1923, before commencement of the proceedings for registration under the Torrens law. Personal service of the petition for registration and a copy of notice of the filing of the petition was

made on said city, which failed thereafter to appear. Section 34 of the Torrens law provides that the registered owner holds the land subject only to such interests as may be noted in the last certificate of title, and free from all others, except: ''(4) Any tax or assessment for which a sale of the land has not been had at the date of the certificate of title''. In the instant case a sale was had prior to the commencement of the registration proceeding. If, as appellant city contends, said sale for city taxes was valid, then under subdivision 4, section 34, the decree for registration and certificate of title issued thereon in 1924 barred the city from asserting any tax title it may have had by virtue of the sale to it for delinquent taxes of 1922–23.

The county taxes for which a sale to the city was made in 1931 were levied in 1925 for the fiscal year 1925–26, which was after registration in 1924 of title to the lots now owned by plaintiff, and said taxes were not, therefore, barred by the decree of registration. The deed to the City of Newport Beach on May 8, 1931, as purchaser under section 3771a of the Political Code, is not in the form prescribed in section 3785b of the Political Code. Said deed is defective in particulars which might be cured by issuance of a corrected deed, if in fact the sale was in accordance with law in the respects as to which the recitals contained therein are irregular. (*Smart* v. *Peek*, 213 Cal. 452 [2 Pac. (2d) 380]; *Morton* v. *Sloan*, 96 Cal. App. 747 [275 Pac. 223]; *Fox* v. *Townsend*, 152 Cal. 51 [91 Pac. 1004, 1007]; *Webster* v. *Somer*, 159 Cal. 459 [114 Pac. 575]; 24 Cal. Jur. 371.)

But said sale to the city, and not merely the deed to it, appears to be invalid in other respects. Where there is a tax delinquency there is first a sale to the state by operation of law. (Sec. 3771, Pol. Code.) Five years thereafter, if the owner has not redeemed the property, it is offered for sale to the public by the tax collector. (Sec. 3771a, Pol. Code.) If purchased at said sale, a deed is not made to the state, but directly to the purchaser. If not purchased at said sale, a deed is made to the state, which thereafter disposes of the property under section 3897 et seq. of the Political Code. ▮▮ Section 77 of the Torrens law (3 Deering's Gen. Laws [1931], p. 4842) provides that a purchaser of registered land sold for any tax or assessment shall, within five days thereafter file in the office of the

registrar a notice of such purchase, and the registrar shall enter a memorial thereof on the certificate of title. It further provides that in case the state or a municipal corporation becomes the purchaser of land sold for any tax or assessment, the tax collector or other officer attending to such purchase, shall within five days thereafter file with the registrar a notice to that effect, and the registrar shall enter a memorial thereof on the register. "Unless such notice is filed as herein provided, the land shall be forever released from the effect of such sale, and no deed shall be issued in pursuance thereof." The requirements of this section are mandatory. (*In re Seick,* 46 Cal. App. 363 [189 Pac. 314]; note on this case, 8 Cal. Law Rev. 450.)

In the instant case a copy of the certificate of title existing at the time of the sale to the state in 1926 for delinquent county taxes and thereafter until issuance of a new certificate in September, 1927, to a purchaser of the lots, is a part of the record. It appears therefrom that no memorial of such sale to the state was entered upon the certificate of title in the register of titles. It must be inferred therefrom that the tax collector failed to file such notice, and that, therefore, the sale was rendered ineffective under the above-quoted provision of section 77. (*In re Seick, supra.*) The city thereafter purchased said lots for the delinquent county taxes in July, 1931, under section 3771a of the Political Code, and notice of this sale was not filed as required by section 77. These facts support the finding of the trial court that the sale from the county of Orange to the City of Newport Beach was void.

The city contends that plaintiff's title should be quieted only on condition that she pay it the amount expended by it in payment of county taxes, costs and penalties, with interest, upon the void sale to it, and redemption made by it pursuant thereto. It is generally the rule that where the owner seeks to quiet his title against an invalid tax sale and deed he must restore to the purchaser the amount paid out by him for taxes, penalties and costs. (*Holland* v. *Hotchkiss,* 162 Cal. 366 [123 Pac. 258, L. R. A. 1915C, 492]; *Weyse* v. *Biedebach,* 86 Cal. App. 712 [261 Pac. 1086]; *Scott* v. *Warden,* 111 Cal. App. 587 [296 Pac. 95]; *Beck* v. *Wilson,* 49 Cal. App. 281 [193 Pac. 158]; 22 Cal. Jur. 136; sec. 3898, subd. 5, Pol. Code.)

Plaintiff acquired the property from the grantee of patentee Harbou in December, 1931, which was after the void sale by the county tax collector to the city. A new certificate of title was issued to her under section 48 of the Torrens law. Under section 34, subdivision 4, this certificate was subject to ''any tax or special assessment for which a sale of the land has not been had at the date of the certificate of title''. We are of the view that a void sale is no sale within the meaning of subdivision 4, section 34. But the ineffective sale to the state in 1926, and the subsequent invalid sale to the city by the county tax collector in 1931, did not destroy the valid debt to the county for taxes for the year 1925 and subsequent years. (*In re Seick, supra.*) A purchaser of the land from the assessed owner would take subject to said taxes, as taxes for which a sale had not been had. In the instant case the city, under the impression that the sale to it in 1931 was valid, paid to the county tax collector $708.75 in payment of all delinquent taxes, costs and penalties assessed prior to 1931. After this redemption the amount of these taxes, with interest, was not due to the county, but to the city, and plaintiff must pay this sum to the city as a condition to quieting her title.

The city also has a claim on account of certain *city* taxes levied by it on these lots. In 1924 the Torrens decree of registration was rendered and the effect thereof, as heretofore held, was to cut off whatever rights the city would otherwise have had under the sale to it in 1923. However, during the five-year period following the sale of 1923 the city, it alleges, regularly assessed the land for city taxes to the owner, as by its ordinances provided in case of an effective sale. A sale would not be had for such taxes, since the city was acting in the belief that the sale to it in 1923 was effective. A sale has never been had for these taxes, and the city has never received payment thereof. Plaintiff took title subject thereto under subdivision 4, section 34, of the Torrens law. As a condition to quieting her title plaintiff should pay to the city the amount of such claim.

We have heretofore held that the judgment is erroneous in denying to the city its rights as administrator of the public trust for navigation and commerce which pertains to these lands. The judgment is reversed with directions to the trial court to make findings and enter judgment on this

phase of the case in accord with the views herein expressed, and also to determine the amount which plaintiff must pay to the city as a condition to quieting her title, subject to the public trust, against the city.

Shenk, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.